**UNITED STATES of America, Plaintiff,**

v.

**Pablo MARCANO GARCIA and Nydia Cuevas Rivera, Defendants.**

Crim. No. 78–107.

United States District Court,
D. Puerto Rico.

Aug. 31, 1978.

U. S. Atty. Daniel López Romo, Old San Juan, P. R., for plaintiff.

Pedro Varela, Hato Rey, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

The Defendants in this case are charged in a three-count indictment, the first of which alleges that from on or about July 3, 1978, up to and including July 4, 1978, at San Juan, Puerto Rico, they, aiding and abetting each other, did willfully and unlawfully seize and confine Ramón González Ruiz, Honorary Consul of the Republic of Chile, who at the time was a "foreign official" and an "internationally protected person" within the meaning of 18 U.S.C. 1116(b), and did hold him for ransom, all in violation of 18 U.S.C. 1201(a). The second count charges that on the same dates the Defendants, aiding and abetting each other, by use of deadly and dangerous weapons, willfully and unlawfully assaulted and offered violence to the Honorary consul of the Republic of Chile, all in violation of 18 U.S.C. 112(a). The last count charges that the Defendants, in connection with Counts I and II did knowingly and willfully make extortionate demands, in violation of 18 U.S.C. 878(b).

On August 10, 1978 Defendants filed a "Motion to Dismiss the Indictment for Lack of Jurisdiction Since the Honorary Consul of Chile in Puerto Rico is not a Foreign Official Under 28 U.S.C. 116(b)" (sic) and a "Motion to Dismiss the Indictment for Lack of Jurisdiction." The basic arguments presented by these Motions are: (a) that an Honorary Consul is not a "foreign official" within the meaning of 18 U.S.C. 1116(b)(3) or an "internationally protected person" as defined in 18 U.S.C. 1116(b)(4),[1] and (b) that alleged criminal acts which occur within the confines of a foreign consulate are in effect taking place on "foreign soil" and are thus not cognizable by the substantive law of the United States.

The Court denied these Motions on August 16, 1978. Thereafter, on August 28, Defendants filed a Motion for Reconsideration which will be the object of our present endeavor.

The language of Section 1116(b)(3) and (4) constitutes the framework within which this matter is to be analyzed. In its pertinent part, the statute reads as follows:

"(3) 'Foreign official' means—

(A) . . .

(B) any person of a foreign nationality *who is duly notified to the United States as an officer or employee of a foreign government* or international organization, *and who is in the United States on official business,* and any member of his family whose presence in the United States is in connection with the presence of such officer or employee.

"(4) 'Internationally protected person' means—

(A) . . .

(B) representative, officer, employee, or agent of the United States Government,

---

1. In the first of these Motions counsel for Defendants states that "[u]nder United States law and under international law an 'Honorary Consul' *is not a foreign official* as contemplated in Title 18, United States Code, Section 1116." (Emphasis added). Nevertheless, in the "Memorandum of Law in Support of Motion to Dismiss", the same attorney convincingly states that "Defendants agree and submit, that Mr. González Ruiz (the Honorary Consul) was and is an 'internationally protected person' and a 'foreign official' . . ." The Court shall obviate this clear contradiction in analyzing the merits of Defendants' arguments. See, *Ellis v. State of Maine,* 448 F.2d 1325, 1328 (C.A. 1, 1971).

a foreign government, or international organization who *at the time and place concerned* is entitled pursuant to international law to special protection against attack upon his person, freedom, or dignity, and any member of his family then forming part of his household." (Emphasis added).

█ Section 1116(b) of Title 18, United States Code and its connected provisions were enacted in the aftermath of the attack on the Israeli Olympic Team at the 1972 Olympic Games in Munich for the purpose of extending the protection of federal criminal law to "resident diplomats, consular and other foreign government personnel and their families . . . " S.Rep. No. 92–1105, 92nd Cong., 2d Sess. (1972), reprinted in [1972] U.S.Code Cong. & Admin. News, p. 4316. Hence, there can be no doubt that an Honorary Consul of foreign nationality "who is in the United States on official business" would fall within the definition of "foreign official" if the Government sufficiently establishes that the requirement of due notification has been satisfied.[2]

█ We will now turn to Defendants' contention that an Honorary Consul is not an "internationally protected person". In this connection, the basic argument is that, under the provisions of the Vienna Convention on Consular Relations, 21 U.S.T. 78 (hereinafter referred to as the "Vienna Convention"), an Honorary Consul is not accorded any "special protection against attack upon his person, freedom or dignity." It is further argued that the Honorary Consul of Chile in Puerto Rico was a resident in this jurisdiction and as such is not entitled

to protection privileges under international law.

Article 1(2) of the Vienna Convention, supra, provides:

"Consular officers are of two categories, namely career consular officers and honorary consular officers. The provisions of Chapter II [Articles 28–57] of the present Convention apply to consular posts headed by career consular officers; the provisions of Chapter III [Articles 58–67] govern consular posts headed by honorary consular officers."

Pursuant to Article 40 of the Vienna Convention, receiving States are expressly required to "take all appropriate steps to prevent any attack on [the career consuls'] person, freedom or dignity." This requirement is not made operative in the case of Honorary Consuls (Art. 58), who are entitled to "such protection as may be required by reason of [their] official position." (Art. 64).

Contrary to the arguments of Defendants, this lesser degree of protection accorded to Honorary Consuls does not place them outside the ambit of 18 U.S.C. 1116(b)(4)(B). It is beyond question that "at the time and place" of the occurrences alleged in this case, the Honorary Consul of Chile was entitled, by virtue of Article 58 of the Vienna Convention, *inter alia,* to the following rights and privileges with respect to official acts (Art. 71):[3]

(a) Freedom of movement and travel within the territory of the receiving state. (Art. 34).

(b) Freedom of communication and inviolability of consular bag and correspondence. (Art. 35).

---

**2.** At the present stage of the trial in this case, the Government has submitted sufficient evidentiary basis for the Court to submit to the jury the question of whether the Honorary Consul of Chile in the Commonwealth of Puerto Rico was "duly notified" to the United States as "foreign official." See, *United States v. Disdar et al.,* 581 F.2d 1031 (C.A. 2, July 27, 1978); *United States v. Taylor,* 464 F.2d 240, 243 (C.A. 2, 1972).

**3.** Article 71 of the Vienna Convention specifies that "[e]xcept in so far as additional facilities,

privileges and immunities may be granted by the receiving State, consular officers who are . . . permanently resident in the receiving State shall enjoy only immunity from jurisdiction and personal inviolability in respect of official acts performed in the exercise of their functions . . . " This qualification mirrors the contours of protection set forth in Article 64 and clearly preserves the protection privileges of Honorary Consuls as regards their consular functions.

(c) Freedom of communication and contact with nationals of the sending state. (Art. 36).

(d) Protection of the consular premises from intrusion or damage, disturbance of the peace and impairment of their dignity. (Art. 59).

(e) Notification of arrest to the sending state through the diplomatic channel. (Art. 42).

(f) Immunity from jurisdiction concerning acts performed in the exercise of consular functions. (Art. 43).

The foregoing clearly indicates that the Law of Nations grants special protection against infringements upon the inviolability of an Honorary Consul's "person, freedom and dignity." The fact that such protection is circumscribed to the official ambit does not detract from its "special" nature, if it is established that the consular officer in question was acting in such capacity "at the time and place" of the occurrences.[4]

Defendants' contentions concerning the "foreign" status of the Chilean Consulate in San Juan encounter an insurmountable difficulty with the language of 18 U.S.C. 878(d), which provides:

"If the victim of an offense under subsection (a) is an internationally protected person, the United States may exercise jurisdiction over the offense *if the alleged offender is present within the United States, irrespective of the place where the offense was committed* or the nationality of the victim or the alleged offender." . . . (Emphasis added).

It is clear to us that Congress has vested federal courts with jurisdiction over the offenses charged herein, even if the Chilean Consulate were considered "foreign soil." See, [1976] U.S.Code Cong. and Admin. News, pp. 4480, 4483. The power of Congress to so extend the thrust of penal stat-

utes cannot be doubted, *Rivard v. United States,* 375 F.2d 882 (C.A. 5, 1967), cert. den. sub nom. *Groleau v. United States,* 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181; see also, *Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1910), particularly considering that the exercise of extraterritorial criminal jurisdiction by the United States has been well recognized by our Courts. See, *United States v. Keller et al.,* 451 F.Supp. 631 (D.C.P.R., 1978); Cf. *United States v. Disdar et al.,* supra.

In view of the foregoing, Defendants' Motions to Dismiss for lack of jurisdiction stand DENIED.

IT IS SO ORDERED.

---

4. Obviously, this determination is the province of the trier of fact. See, Note 2, supra. In any event, the Indictment in this case also characterizes the Honorary Consul of Chile in the Commonwealth of Puerto Rico as a "foreign official." 18 U.S.C. 1116(b)(3)(B). As we stat-

ed hereinbefore, nothing indicates that Honorary Consuls cannot be deemed to fall under any one of the two categories of 18 U.S.C. 1116(b). See [1972] U.S.Code Cong. & Admin.News, supra.