**UNITED STATES of America, Plaintiff,**

v.

**Pedro Baiges CHAPEL, Defendant.**

**Crim. No. 79–155.**

United States District Court, D. Puerto Rico.

Nov. 1, 1979.

Alberto Tellechea, Asst. U. S. Atty., San Juan, P.R., for the government.

Juan Mari Bras, Rio Piedras, P.R., for defendant Chapel.

Emilo Soler Mari, Rio Piedras, P.R., standby counsel for defendant Chapel.

Emilo Soler Mari, Rio Piedras, P.R., J.L.A. de Passalaqua, Isla Verde, P.R., for the surety José Carreras.

## DECISION AND ORDER

TORRUELLA, District Judge.

This matter is before the Court on a "Certification of Facts to a District Judge" filed September 21, 1979 by a United States Magistrate for this District, in which it is recommended that Defendant's cash bond of $10,000 be forfeited for his alleged breach of a bail condition, to wit, Defendant's failure to surrender his passport on or before a date certain.

Some background evidence is of relevance to a full understanding of the issues before us.

Defendant, an attorney admitted to practice before the Courts of the Commonwealth of Puerto Rico,[1] but not this jurisdiction, was arrested and charged on May 19, 1979 with violation of 18 U.S.C. § 1382. Thereafter, he was released on a personal, unsecured bond in the sum of $500 and as a condition of his release was required "not to travel outside the Island of Puerto Rico without prior written authorization of this Court." This latter condition was contained in Paragraph (2) of Part II of the "Order Specifying Methods and Conditions of Release", generally referred to as "Bail Reform Act Form No. 2."

On May 23, 1979, Defendant, through counsel sought and received permission to travel to the Island of Vieques to conduct an on-site inspection in connection with preparing for defense to the charges in question. This permission was thereafter varied on May 25, 1979 by a telephone conversation between counsel for Defendant and the Magistrate. On this same date counsel for Defendant filed a Motion challenging the validity of the travel restrictions, which Motion was denied by the Magistrate on May 29, 1979, and thereafter was unappealed.

The record is replete with various Motions filed by Defendant on matters not presently relevant.

On July 20, 1979 a status conference was held before the Court in which the trial was set for September 5, 1979 and for pre-trial August 21, 1979.

Thereafter various other Motions were filed which are again not relevant herein.

The "Pretrial Memorandum" filed by the Magistrate on August 22, 1979 indicates that "[t]he defendant has received full discovery from the government and is ready to proceed for trial." The said document indicates that Defendant was represented at that hearing by one of his counsel, Mr. Pedro Varela, and that Mr. Juan Mari Bras, another of Defendant's counsels, received notice of said Memorandum.

On September 4, 1979 at 12:45 P.M., Defendant, through counsel Mr. Mari Bras, filed a "Motion for Continuance" of the trial scheduled to begin on September 5, 1979 at 9:00 A.M., stating as grounds thereof that ". . . defendant will be outside this jurisdiction on that date due to an engagement that had been previously taken." The said Motion was denied at 1:34 P.M. of September 4, 1979 and all parties were immediately notified.

On September 5, 1979, Defendant failed to appear at his trial.[2] Mr. Mari Bras also was absent.[3] Mr. Varela and counsel Pedro Saadé, who appeared at the hearing, notwithstanding their prior active participation in the proceedings of this case up to then, indicated that they were not authorized to represent Defendant at trial. In view of Defendant's absence, this was a moot point, cf., *United States v. Colón Lespier*, 430

---

1. Defendant has 15 years of practice, mostly in the criminal and labor fields.

2. At the hearing of this matter, Defendant admitted that he was outside the jurisdiction of this Court on this date. A Motion filed by Mr. Mari Bras on September 7, 1979 stated that Defendant was ". . . in the 6th Summit Conference of Non-Aligned Nations held in Havana from the 1st to the 9th days of September, 1979. . . ."

3. This absence, together with other later actions of Mr. Mari Bras, was the subject of a criminal contempt charge against said counsel in which he was found guilty of violation of 18 U.S.C. § 401(3), sentenced to 30 days imprisonment, and disbarred from practice before this Court.

F.Supp. 269 (D.P.R., 1975), rev'd 558 F.2d 624, 628–629 (C.A. 1, 1977).

A bench warrant was issued for Defendant's arrest and his bond ordered impounded.

Defendant was arrested on September 13, 1979 and bail set at $10,000 cash by the Magistrate, who also indicated that "[i]f said bond is posted, further conditions of release will be imposed."

On September 17, 1979, Defendant posted the cash bail through a surety, Mr. José Carreras. The appearance bond indicates that:

"The conditions of this bond are that the defendant Pedro Baiges Chapel is to appear before the   .   .   ., United States Magistrate for the Judicial District of Puerto Rico, at San Juan, Puerto Rico, and in the United States District Court for the Judicial District of Puerto Rico, at San Juan, Puerto Rico, and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the magistrate   .   .   .

.   .   . [I]f the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith.   .   .   ."

The bond further indicates that Mr. Carreras' address is "# 212 Mayaguez St., Suite 3–B, Hato Rey, Puerto Rico 00917." Defendant himself also signed this bond.

Prior to Defendant's release on September 17th, the Magistrate signed another "Order Specifying Methods and Conditions of Release." In its original form Paragraph (2) 2) of Part II of the Order required Defendant to "surrender any passport he may possess." Upon Defendant's allegation that, having been incarcerated he did not have the passport in his possession, the following language was added, with the Magistrate's consent and approval: "He is allowed until tomorrow, September 18, 1979, at 4:30 P.M. to bring the passport to the Court." Defendant admits that he was fully aware of this condition at the time of his release, and in fact the record is clear, that at the time of his release, he received a copy of this order containing these provisions.

The order also states that Defendant shall appear whenever summoned to appear, that he "understands the conditions of his release and the penalties and forfeitures applicable in the event [he] violate[s] any condition or fail[s] to appear as required", and that he ".   .   . agree[s] to comply fully with each of the obligations imposed on [his] release   .   .   ."

Defendant never surrendered his passport to the Court. Upon his release he held a press conference and made a public statement to the effect that he would not comply with this requirement.[4] On September 25, 1979 Defendant was arrested again and committed upon his refusal to post $25,000 bond.

The crux of Defendant's and the surety's contention is that the failure of Defendant to turn in his passport, even if it is a violation of the conditions of release, is not a violation of the *appearance bond* and thus can not be the basis for the confiscation of the bail.

Surety, Mr. Carreras, states that when he signed the bond he was unaware of the conditions of release and thus not bound by them since the bond makes no reference to the said conditions. The surety relies upon the rule that a bail bond in a criminal case is a contract that is to be construed strictly in favor of the surety. Cf. *Dudley v. United States*, 242 F.2d 656 (C.A. 5, 1957); *Swanson v. United States*, 15 Alaska 608, 224 F.2d 795 (C.A. 9, 1955). This proposi-

---

4. Defendant, an experienced criminal lawyer, claims that he was duped into accepting these conditions by the deputy marshal under whose custody he was at that time. Defendant alleges that the marshal told him to accept these conditions because they had been approved by his counsel. This contention is only mentioned as background and as a measure of the lack of credibility given by the Court to Defendant's testimony. In any event Defendant filed no motion or made no attempt to have this condition changed.

tion cannot be disputed. We cannot, however, look at this issue in a vacuum.

Surety is himself a lawyer since 1974 and a member of this bar since 1975, with experience before this Court in various civil and criminal cases. He is hardly in a position to claim ignorance of the provisions of release pursuant to the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, having acted as counsel in criminal cases in which the same was in effect and the same "Order Specifying Methods and Conditions of Release" (i. e. Bail Reform Act Form No. 2) was used.[5] Furthermore, the evidence shows that Mr. Carreras became aware of the conditions imposed on Defendant at least upon reading the newspaper accounts of Defendant's press conference, the day after his release,[6] yet he made no effort to seek Defendant's appearance with his passport in Court by 4:30 P.M. of September 18, 1979, or at any time thereafter.

The turning in of his passport by Defendant is a condition of release closely connected to, and in furtherance of, his future appearances in Court, particularly in view of Defendant's prior actions in this case. There is no doubt but that Mr. Carreras was fully aware of Defendant's prior conduct at the time of his signing as surety.

Most importantly, however, the condition in the release order whereby Defendant was ". . . allowed until . . . September 18, 1979 at 4:30 P.M. to bring the passport to the Court", is an ". . . order and direction [of a United States Magistrate] relating to the Defendant's appearance . . .", pursuant to the terms of the bond in question. Defendant's failure to obey the same thus subjects the surety and Defendant to ". . . payment of the amount of this bond . . .

forthwith." See *Brown v. United States*, 410 F.2d 212 (C.A. 5, 1969), cert. den. 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969); *Estes v. United States*, 353 F.2d 283 (C.A. 5, 1965); *United States v. Stanley*, 449 F.Supp. 467 (N.D.Calif., 1978). Cf. *United States v. D'Argente*, 227 F.Supp. 596 (N.D. Ill., 1964), rev'd, 339 F.2d 925 (C.A. 7, 1965). The surety was as bound by this condition as a notification that Defendant was to stand trial on a specific date, issued after the surety signed the bond.

The actions of Defendant and surety justify the forfeiture of the entire amount posted, as a deterrent to future conduct of this nature. *Jeffers v. United States*, 588 F.2d 425, 427 (C.A. 4, 1978).

---

5. See file in *U. S. v. Marcano, et al.*, 456 F.Supp. 1358 (D.C.1978).

6. There is also evidence that the night of his release, Defendant met with Mr. Varela and informed him of his intended non-compliance. Mr. Varela and Mr. Carreras are somehow associated at law. The files of this Court show that both have offices at the same address ("212 Mayaguez St., Suite 3 B, Hato Rey, P.R. 00917") and telephone number ("Tel. 751–

8995"), use stationery wherein their names jointly appear as members of the same firm ("Escribano, Carreras, Acevedo, Pérez, Varela"), and actively appear as counsel together in many cases before this Court (*ex. Acosta et al. v. Pérez Burgos*, Civil No. 78–1454; *U. S. v. Marcano, et al.*, supra; *Fields et al. v. Joyerí Barquet*, Civil No. 78–806), Cf. *In Re Clavell Ruiz*, 106 D.P.R. (September 29, 1977) (Bar Assoc. Ref. Num. 80–1977).