UNITED STATES of America, Plaintiff,

v.

James Orlando QUINTANA, Defendant.

Crim. A. No. 76–CR–276.

United States District Court,
D. Colorado.

April 27, 1981.

Joseph F. Dolan, U. S. Atty., Brian G. McConaty, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Joseph Saint-Veltri, Denver, Colo., for defendant.

MEMORANDUM OPINION, ORDER FORFEITING BOND, AND STATEMENT MADE PURSUANT TO RULE 9(c), FEDERAL RULES OF APPELLATE PROCEDURE.

WINNER, Chief Judge.

In a trial before Judge Finesilver, defendant was convicted of three offenses having to do with the distribution of heroin. Judge Finesilver sentenced defendant to terms of imprisonment of 15 years on each of the three counts, the prison sentences to run concurrently and he fined defendant $25,000. Additionally, a special parole term of 15 years was imposed.

I have before me a transcript of the sentencing hearing and of a hearing held that same day before Magistrate Sickler in connection with defendant's release on bond. Pursuant to the provisions of Rule 46(c), bond was fixed by Judge Finesilver in the amount of $250,000, and defendant posted a property bond in that amount the day of sentencing.

Judge Finesilver said at time of sentence: "In the event that the bond is placed, it will be the order of Court that on Monday of each week you will report to the probation office and advise them where you are living, where you are working.

"Further, that you do not leave the jurisdiction of the court unless there is a court order directing your attendance or appearance at another court, and setting forth the date and specified time of that appearance.

"You are not to apply for any passports or visas. You are not to leave the State of Colorado without advance motion and order being granted by this court, and processing of same should go through the probation office."

When sentenced, defendant was remanded to custody, but he made the $250,000 property bond in less than six hours, and when he made the bond, the magistrate told him:

"Another condition of the bond as imposed by Judge Finesilver is that you are not to leave the jurisdiction of this Court, which is the State of Colorado, unless you are ordered to appear someplace outside Colorado in a criminal prosecution. I don't know the reason—are there other cases pending, Mr. Saint Veltri?

"MR. SAINT VELTRI: Yes, Your Honor. There is a case pending in the Northern District of California. We have on previous occasions applied for and received permission to depart the State of Colorado to make necessary Court appearances in the Northern District of California.

"MAGISTRATE SICKLER: And that's why Judge Finesilver stated that the way he did. I didn't know that there were any other cases. So you are not to leave Colorado except to appear in another court as ordered for any cases pending against you."

Mr. Quintana later acknowledged that he understood the conditions of the bond and he was released.

A study of the record shows that defendant Quintana did indeed understand his obligations. Written requests were made to go to California for court appearances, and this travel was permitted. Another request was denied, and Judge Finesilver required advance notice and counsel's certification of need for defendant's presence in support of all such requests. On April 20, 1981, the

government asked for a bench warrant and for an order to show cause why defendant's bond should not be revoked because he had left the state without permission. On that date Judge Finesilver was outside the state conducting hearings in non-Colorado swine flue cases assigned to him. Therefore, I authorized the bench warrant and issued the order to show cause. Defendant was brought before me on April 21, 1981, and a hearing was commenced. Defendant asked that it be continued for the taking of further testimony on April 23, 1981, and, with defendant's consent, because of defense counsel's illness another continuance was granted until April 27, 1981.

I am satisfied from the evidence I have heard that defendant was a fugitive for four years following the return of the 1976 indictment under which he was convicted and sentenced, and I am satisfied that he fully understood the conditions of the bond. Because of the short time available to the government to present its case, I received hearsay to establish some of the government's contentions, but, if defendant wishes, a further hearing will be held to afford cross-examination of witnesses claiming to have personal knowledge of any such facts. I have listened to the hearsay because of the nature of the proceeding, and I am satisfied that the defendant was observed in Las Vegas, New Mexico, during April, 1981. It is proven that he had no permission to be there. Moreover, the evidence I have heard establishes probable cause to believe that when he was in Las Vegas, New Mexico, he and his lady companion were there to arrange to deal in substantial amounts of heroin. More than a pound of heroin was found later at that same companion's house in Denver, and she has been arrested on state charges. There is probable cause to think that defendant was involved in this recent heroin distribution case.

■ Accordingly, pursuant to the provisions of Rule 46(e)(1) F.R.Cr.P., I find that there has been a breach of a condition of defendant's bond, and I declare it forfeited. This is done subject to the rights of the sureties to seek relief under other provisions of Rule 46(e), but, unless and until some relief is granted to them, the properties posted by them as security for defendant's release are ordered forfeited to the United States, and, to protect the government's interests, the United States Attorney is directed to record appropriate notice of this order of forfeiture.

This brings me, then, to the problem of when a defendant can be held without bail pending completion of his appeal. I did not participate in the trial of this case, and, accordingly, I have no knowledge of the questions which will be presented to the Court of Appeals. That being so, I assume for the purposes of this order that the appeal is not frivolous, and this assumption is supported by my knowledge of defense counsel's abilities and ethics. That being so, one reason for refusing release on bail while a case is on appeal (frivolity of the appeal) is not present, and only the language of Rule 46(c), F.R.Cr.P. and Rule 9(c) F.R.App.P. need be considered.

■ I have found no case which discusses the applicability of either of these rules and of the Bail Reform Act following a motion to revoke bond and following the declaration of a forfeiture of a defendant's appeal bond. It may be that they have no applicability, but I choose not to explore this possibility, and I go ahead to give defendant a second bite at the apple. There are surprisingly few cases dealing with either of the two rules following the amendment of each in 1972, and the only Court of Appeals case I have found is *United States v. Provenzano,* (1979) 3 Cir., 605 F.2d 85. That opinion mentions lower court decisions in *United States v. Stanley,* 449 F.Supp. 467, *United States v. Miranda,* 442 F.Supp. 786, *United States v. Rodriguez,* 423 F.Supp. 110, *United States v. Parr,* 399 F.Supp. 883, and *United States v. Karmann,* 471 F.Supp. 1021. These lower court cases also talk about the effect of the 1972 change in burden of proof set forth in both Rule 46(c) F.R.Cr.P. and Rule 9(c) of the Appellate Rules. Each of those rules was amended to say, *"The burden of establishing that the*

*defendant will not flee or pose a danger to any other person or to the community rests with the defendant.*" With this shift of burden of proof, the provisions of 18 U.S.C. § 3148, still apply (perhaps just in part) to post-conviction releases—at least to post-conviction releases before bond is forfeited.

Defendant's record is less than supportive of any claim that he should be admitted to bail again. Following an earlier narcotics conviction, defendant was sentenced to seven years in the Colorado penitentiary. He was released in April, 1976, and one month after his release from prison he started to sell the heroin involved in the case which is now on appeal. All of his co-defendants were convicted or they pleaded guilty in 1976, and defendant took off. He was a fugitive for four years before he could be tried for these offenses. Almost 300 grams of cut heroin were sold, and the cut heroin reduces to 56.41 grams of pure heroin. As I am sure defendant well knows, the Parole Commission evaluates the severity of an offense partly on the basis of the quantity of pure heroin sold, and sale of this much pure heroin is classified as a narcotics offense of the greatest severity. Defendant is looking at a long time in jail if the convictions are affirmed, yet, while out on appeal bond and in manifest defiance of the bond's conditions, defendant went to New Mexico. There is probable cause to think that he went there to again traffic in heroin. Moreover, he still faces an earlier bond jumping charge in this court and he is charged in the federal court in San Jose, California, with attempted bribery of a federal officer. With defendant's record, I think that there is grave risk that defendant will flee if he is out on bond and if the conviction is affirmed.

The Third Circuit said in *Provenzano*: "The [Bail Reform] Act's provisions regarding bail pending appeal, however, now effectively limit judicial consideration in these matters to two relevant criteria; the risk that the defendant will flee and the risk that he will pose a danger if admitted to bail. Furthermore, the Bail Reform Act imposes a duty on federal courts not only to determine whether an applicant poses such risks, but also to measure them 'in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release.'

.  .  .  .  .

"Decisions in cases involving bail applications pending appeal prior to the Bail Reform Act clearly placed the burden of establishing the risk of danger to the community on the government, and firmly established the principle that doubts whether bail should be granted or denied should be resolved in the applicant's favor. The Act left these principles essentially unchanged—specifying that a denial of bail is justified only if a 'court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger'—and courts interpreting the Act's provisions continued to abide by them in subsequent decisions. *But the enactment of Federal Rule of Appellate Procedure 9(c), inverted both this burden of proof allocation and the attendant principle of resolving doubts in the applicant's favor at the same time it incorporated the Bail Reform Act criteria for release.* In effect, the rule thus combined 'criteria devised to liberalize the granting of bail pending appeal with an allocation of the burden of proof designed to have the opposite effect.' *Bail Pending Appeal,* 57 Tex.Law Rev. 275, 278–79. "Rule 9(c) provides in part: 'The burden of establishing that the defendant will not flee or pose a danger to . . . the community rests with the defendant.' The Advisory Committee note to this rule explains that the burden of persuasion is placed upon the defendant in the case of bail applications pending appeal because 'the fact of his conviction justifies retention in custody in situations where doubt exists as to whether he can be safely released pending disposition of his appeal.' . . . Provenzano concedes that a defendant has the burden of establishing that he does not pose a danger to the

community. But Provenzano contends nevertheless that 'the cases have uniformly looked to the evidence submitted by the Government in order to determine whether the defendant represents such a danger.' As the Government's brief indicates, however, all the cases cited by Provenzano in support of that contention are not persuasive here inasmuch as they predate the amendment. . . .

". . . Judicial decisions subsequent to the 1972 amendment appear to have accepted without question the intent of Rule 9(c) that applicants for bail pending appeal establish that they pose neither a risk of flight nor a risk of harm.

"The Bail Reform Act specifies neither the kinds of harm nor the particular factors to be considered in determining whether the defendant poses a danger to the community. The trial judge's study of decisions interpreting the Act's 'danger to the community' provision, however, convinces him that courts are not confined in such cases to considering only harms involving an aura of violence. We agree and hold that a defendant's propensity to commit crime generally, even if the resulting harm would not be solely physical, may constitute a sufficient risk of danger to come within the contemplation of the Act."

Defendant has not carried the burden of establishing either that he will not flee or the burden of establishing that he does not pose a danger to the community. In fact, the government has clearly carried the burden of establishing that defendant does pose a danger to the community. Judge Finesilver imposed strict conditions, but they didn't work. I can think of no conditions likely to deter defendant from future flight or future drug dealing. I think that on the record made, under pre-1972 law defendant's release at this point should be denied because of the proof submitted by the government, but with the inverted burden imposed by the 1972 amendments to Rule 46, F.R.Cr.P. and Rule 9(c) of the Appellate Rules, I am convinced that defendant should not again be admitted to bail pending resolution of his appeal. He

has established his unreliability, but, even if this be not so, he has not carried his burden of showing that he does not pose a danger to the community, no matter what conditions may be imposed on him.

If all other charges pending against defendant are resolved in his favor prior to the decision of his appeal of this case, he can again ask to be released, but, with his past record of flight, with the severity of the sentence he is under, with the sentence potential of the untried charges and with the disregard of the former bond's conditions, there exists grave risk of future flight and defendant hasn't shown me that he doesn't pose a threat to society which can be eliminated by imposition of conditions. If he is to be released on bail pending decision on this appeal, that release will have to be ordered by an appellate court, and it is intended that this memorandum shall constitute the required "order refusing . . . release", as well as the statement in writing of the reasons bail has been refused necessary under Appellate Rule 9(c).