UNITED STATES of America, Plaintiff,

v.

John Joseph VACCARO, Defendant.

No. CR–R–84–46–ECR.

United States District Court,
D. Nevada.

April 4, 1989.

Opinion on Motion for Reconsideration
Aug. 8, 1989.

H. Dale Murphy, Reno, Nev., and Stephen B. Krimel, San Diego, Cal., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

This is an appeal from a report and recommendation filed by Magistrate Phyllis Halsey Atkins on August 15, 1988, (document # 775), wherein she declared a forfeiture of two bonds posted on behalf of defendant John Joseph Vaccaro. Because we find that the proper procedures were not followed at Vaccaro's bail forfeiture hearing, and insufficient evidence to support forfeiture of Bond # 2, we remand this

cause to the Magistrate for further hearing, consistent with this order.

## FACTUAL BACKGROUND

Defendant John Joseph Vaccaro was indicted by a federal grand jury in the District of Nevada for a variety of crimes related to interstate racketeering. On June 30, 1984, Vaccaro made an initial appearance before United States Magistrate Philip M. Pro in Las Vegas, Nevada, (document # 29). On July 5, 1984, Bernadine D'Anna of Rusty's Bail Bonds (Rusty's) posted a $100,000 corporate surety bond for Vaccaro (Bond # 1). The underwriter on the bond was Allied Fidelity Insurance Company (Allied). *See* Document # 29. Magistrate Pro issued a separate Order Specifying Methods and Conditions of Release (document # 29). This order, signed by Vaccaro, contained a condition that "the defendant shall not violate any local, state, or federal laws or regulations."

On March 28, 1985, the jury returned a guilty verdict on seventeen counts against Vaccaro (document # 385). *See United States v. Vaccaro,* 602 F.Supp. 1132 (D.Nev.1985). This Court continued Vaccaro's conditions of release as they had been previously set (documents # 400 and 401).

On June 6, 1985, this Court imposed sentence on Vaccaro and increased his bond pending appeal to $350,000 cash or corporate surety, incorporating the previously posted $100,000 bond (document # 490). On June 11, 1985, Joe Andre of Sparks Bail Bonds (Sparks) posted a $250,000 corporate surety bond (Bond # 2). The bond underwriter on Bond # 2 was Classified Insurance Corporation (Classified) (document # 502). This Court issued a separate Order Specifying Methods and Conditions of Release (document # 503). This order contained a condition that the defendant "shall not commit a Federal, State, or local crime while on release." The Ninth Circuit affirmed Vaccaro's conviction in *United*

*States v. Vaccaro,* 816 F.2d 443 (9th Cir. 1987), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987).

On May 21, 1987, the Special Grand Jury for the United States District Court, Central District of California, returned indictment No. CR–87–439 against, *inter alia,* John Joseph Vaccaro (document # 662, Exhibit A) (California Indictment). The indictment charges Vaccaro with conspiracy, extortion, distribution of cocaine, and RICO violations. Some of these violations allegedly occurred between August, 1984, and August, 1985, while Vaccaro was released on bond during the pendency of his federal criminal case here in Nevada.

On May 27, 1987, the United States moved to revoke the conditions of Vaccaro's release and to forfeit his bail (document # 662). Magistrate Atkins ordered that a warrant be issued for Vaccaro's arrest (document # 663). A hearing was held before Magistrate Atkins on October 5 and 6, 1987, at the request of bond underwriters Classified and Bell[1] (document # 667). Because Vaccaro conceded the issue on revocation of his release, the sole issue for determination at the hearing was the forfeiture of Vaccaro's bond (*see* Transcript of Hearing, page 6, lines 19–20).

At the hearing, over the objection of Vaccaro's counsel, hearsay evidence was taken on the issue of whether Vaccaro had breached a condition of his release. Relying on Fed.R.Evid. 1101(d)(3) for the proposition that the rules of evidence do not apply to "proceedings involving bail," (document # 775, page 13, line 21), the Magistrate permitted hearsay testimony from FBI Special Agent John Jones regarding alleged criminal conduct of Vaccaro between August, 1984, and August, 1985. Specifically, Special Agent Jones testified regarding acts alleged in count sixteen of the California indictment, wherein Vaccaro is charged with distribution of cocaine on or about August 5, 1985. (*See* California

---

1. In the brief of Classified and Bell Bail Bonds (Bell), opposing forfeiture of Vaccaro's bond (document # 680), Bell, of Van Nuys, California, states that Bond # 1 was initiated through Allied by them. Allied's Las Vegas agent, Rusty's Bail Bonds, posted Bond # 1 upon the request of

Bell, as a "standard trade courtesy." Document # 680, page 1 n. 1. Allied is apparently in liquidation; however, Bell concedes liability for the $100,000 bond, and opposes forfeiture as a real party in interest.

Indictment, Exhibit A to document # 662). Based on this testimony, and the California indictment, the Magistrate found "probable cause to believe that Vaccaro violated federal laws while he was released on bond" (document # 775, page 5, lines 3–4).

She further noted her knowledge of Vaccaro's subsequent guilty plea to count six of the California indictment (document # 775, page 16, lines 3–13; page 16, line 26 and page 17, lines 1–12). Count six alleged extortion between August, 1984, and August, 1985. The Magistrate concluded that all this evidence was sufficient to find probable cause to believe that Vaccaro had violated the "break no laws" condition of his bond during the period of his release. She ordered forfeiture of the bonds on that basis (document # 775, pages 16–17). She further denied any remission of the bond, finding that it "would not be in the interest of justice" (document # 775, page 26, lines 6–7).

Defendant Vaccaro filed his objections to the Magistrate's report (document # 777), as did sureties Classified and Bell (document # 779). Vaccaro objects to the Magistrate's findings that 1) a "break no laws" provision was a condition of his release; 2) that Fed.R.Crim.P. 46(e) governs a bail forfeiture, rather than the provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq.; 3) that Vaccaro was not entitled to a trial by jury on the issue of forfeiture; 4) that the Rules of Evidence do not apply to a bail forfeiture hearing; 5) that the government need show breach of condition by probable cause, not by a preponderance of the evidence; 6) that Vaccaro's plea of guilty was for conduct taking place between August, 1984, and August, 1985. Further, Vaccaro argues that ex parte contact between the government and Magistrate Atkins regarding Vaccaro's guilty plea should disqualify Magistrate Atkins from any further hearings necessary in this case.

Bell and Classified join in Vaccaro's objections. They further object to the Magistrate's findings that 1) the issuing bail agents had real or apparent authority to bind the corporate sureties to something

beyond an "appearance bond;" and 2) the terminology of the bonds supports forfeiture for a breach of condition.

## STANDARD OF REVIEW

According to 28 U.S.C. § 636(a)(1) and Local Rule 11(c)(I)(B)(3), we review de novo the Magistrate's recommendation to forfeit the bond of defendant John Vaccaro. The order of forfeiture being dispositive and not merely a pretrial matter, the appropriate standard of review is de novo, and not the clearly erroneous or contrary to law standard.

## DISCUSSION

### A. Rule 46(e) and the Bail Reform Act

■ All defendants contend that the provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., should control this bail forfeiture proceeding. They argue that Fed.R.Crim.P. 46(e) was superceded by the 1984 amendments to the Bail Reform Act, and that forfeiture of bond is no longer a permissible sanction for violating a condition of release. We disagree.

Rule 46(e)(1) provides: "If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail." Subsections (2) and (4) go on to empower district courts with discretion in setting aside or remission of a forfeiture. We believe that the Bail Reform Act was never intended to supplant remedies available pursuant to Rule 46. This holding is consistent with other decisions.

For example, in Brown v. United States, 410 F.2d 212, 215–17 (5th Cir.1969), cert. denied, 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (1969), the Fifth Circuit iterated its conclusion that there is no conflict between the provisions of the Bail Reform Act and Rule 46(e). Rather, the two are "complimentary and form a unified system in dealing with pretrial release." Brown, 410 F.2d at 216. See also United States v. Castaldo, 636 F.2d 1169, 1171 (9th Cir. 1980). The Bail Reform Act only authorizes forfeiture of bond for breach of appearance related conditions. It further provides other heavy penalties for the most serious breach—nonappearance. See 18 U.S.C. § 3146. The Bail Reform Act is silent with respect to penalties for nonap-

pearance related breaches. But in Rule 46(e), Congress maintained forfeiture of bond as a penalty for breach of *any* condition of release. Therefore, under Rule 46(e), forfeiture of bond is an appropriate sanction for violation of a condition of release, whether the condition is appearance or nonappearance related.[2]

Because we hold that Rule 46(e), and not the provisions of the Bail Reform Act, controls a bail forfeiture proceedings, it is irrelevant that the Bail Reform Act does not authorize forfeiture for a nonappearance-related breach. Further, that the first bond was issued before the effective date of the 1984 revisions to the Act is likewise without import.

### B. *Procedural Entitlements*

#### 1. Hearing

■ There appears to be no uniform rule among federal courts regarding a defendant's right to a hearing to determine whether a condition of bond has been breached. Most instances of breach relate to a defendant's failure to appear for court proceedings; in that case, the breach is generally apparent, and forfeiture issues usually center on compliance with other procedural requirements. *See, e.g., United States v. Minor*, 846 F.2d 1184 (9th Cir. 1988) (trial court ordered forfeiture of appeal bond upon defendant's failure to appear; trial court did not err in remitting only $65,000 of defendant's $75,000 appeal bond where defendant's breach was willful); *United States v. Frias–Ramirez*, 670 F.2d 849 (9th Cir.1982) (judgment of forfeiture affirmed where defendant breached condition of bond when he failed to appear; court found magistrate adequately informed sureties of their obligation in event of breach), *cert. denied*, 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982); *Appearance Bond Surety v. United States*, 622 F.2d

334 (8th Cir.1980) (under Fed.R.Crim.P. 46(e), district court is required to forfeit bond for breach of the bond agreement upon defendant's failure to appear; however, court has discretion to remit forfeiture when justice so requires); *United States v. Lujan*, 589 F.2d 436, 438 (9th Cir.1978) (forfeiture of bond for defendant's failure to appear at several court proceedings justified where defendant remained at large; notice of required court appearances held to be adequate), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 287 (1979); *United States v. Plechner*, 577 F.2d 596, 598 (9th Cir.1978) (forfeiture of bond for defendant's failure to appear affirmed where issue of whether defendant had breached condition of bond raised for first time on appeal).

Where a defendant is charged with breach of a non-appearance-related condition, proof problems become more apparent. A certain amount of evidence should be taken when determining whether a defendant has, for example, breached a travel restriction, or committed a crime while on release. Our research revealed a wide discrepancy in acceptable evidentiary procedures. *See, e.g., United States v. Stanley*, 601 F.2d 380, 381 (9th Cir.1979) (defendant provided an evidentiary hearing "with an opportunity to refute the charges" that he had violated a travel restriction, before the court ordered forfeiture of defendant's bond); *United States v. Quintana*, 525 F.Supp. 917 (D.Colo.1981) (district court forfeited defendant's bond after he travelled in violation of the bond agreement, based on hearsay evidence presented at a hearing regarding defendant's alleged breach; court heard hearsay evidence "[b]ecause of the short time available to the government to present its case," and "because of the nature of the proceeding,"

---

**2.** A further justification for maintaining forfeiture for breach of nonappearance-related conditions is found in the amendments to Rule 46 itself. In 1984, Subdivisions (a) and (c) were amended to reflect new numbering in the 1984 amendments to 18 U.S.C. § 3141 *et seq.* In addition, two new subdivisions were added: subdivision (e)(2), which provides for setting aside forfeitures, and subdivision (h), which au-

thorizes forfeitures if the value of the property would be an appropriate sentence after conviction. Congress clearly had the opportunity to alter Rule 46(e)(1); its failure to do so is an indication of the continued viability of the 46(e)(1) forfeiture sanction. The 1984 amendments to Rule 46 are found in 98 Stat. 1987 Sec. 209, *reprinted in* Vol. 2 1984 U.S.Code Cong. & Admin.News 697, 1985, 1987.

but stated that defendant would be granted a further hearing to afford cross-examination if he so desired. *Id.* at 919); *United States v. Boothman,* 498 F.Supp. 798 (D.Kan.1980) (defendant who travelled and associated with a felon in violation of his bond agreement was afforded a "full evidentiary hearing" which was "full and thorough" before bond was forfeited), *aff'd,* 654 F.2d 700 (10th Cir.1981).

■ Because the stakes are significant, we believe the better practice is to provide an evidentiary hearing to any defendant requesting one. The hearing will provide an opportunity for all parties to present evidence on the issue of whether any condition of release was violated. Of course, where a hearing is not requested, it need not be given. *See, e.g., United States v. Chavez,* 1987 WL 31581 (E.D.Pa.1987) (trial judge decided merits of government's forfeiture motion where the record was sufficient, neither the government nor the defendant requested an evidentiary hearing, and the defendant expressly requested a decision based on the record without oral argument).

### 2. Federal Rules of Evidence

Federal Rule of Evidence 1101(d)(3) states that the Rules do not apply to "proceedings with respect to release on bail or otherwise." The report and recommendation cites the Advisory Committee Notes [3] to support the finding that the Rules are inapplicable in "all proceedings *involving* bail" (document # 775, page 13, line 2) (emphasis in original). However, a careful reading of the Advisory Committee Notes will reveal that 18 U.S.C. § 3142(f), to which it refers, no longer exists. Section 3142(f) was deleted by the 1984 amend-

ments to the Bail Reform Act. *See* Act of October 12, 1984, Pub.L. 98–473, Title II, c. 1, § 203(a), 98 Stat. 1976. Furthermore, originally enacted as part of the Bail Reform Act of 1966, section 3142(f) only exempted "orders entered pursuant to this section," *i.e.,* section 3146. Section 3146 governed release of defendants in noncapital cases. Section 3142(f) was consistent with Fed.R.Evid. 1101(d)(3) in exempting orders and proceedings regarding *release* of a defendant. Nowhere in the Bail Reform Act of 1966, nor in the current Act, are the Federal Rules of Evidence exempted from bail forfeiture proceedings.

The only language regarding rules of evidence in the current revision of the Bail Reform Act is located in section 3142(f). Section 3142(f) relates to detention hearings, held immediately upon the defendant's first appearance before a judicial officer, to determine whether any conditions of release will assure the appearance of the defendant and the safety of the community. This section provides that the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f). This allows the judicial officer discretion to consider diverse information when determining appropriate conditions upon which a defendant may be released. *See* Act of October 10, 1984, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Admin.News (98 Stat) 3182, 3203–05. However, that language only applies to detention hearings; the Act gives no indication that bail forfeiture hearings should not be held in accordance with the rules of evidence.

■ Because we read Fed.R.Evid. 1101(d)(3) narrowly, because bond forfei-

---

**3.** The Advisory Committee notes on Fed.R.Evid. 1101(d)(3) states that:

Proceedings with respect to release on bail or otherwise do not call for application of the rules of evidence. The governing statute specifically provides:

"Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law."

18 U.S.C.A. § 3142(f). This provision is consistent with the type of inquiry contemplated in A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pretrial Release, § 4.5(b), (c), p. 16 (1968). The references to the weight of the evidence against the accused, in Rule 46(a)(1), (c) of the Federal Rules of Criminal Procedure and in 18 U.S.C.A. § 3146(b), as a factor to be considered, clearly do not have in view evidence introduced at a hearing under the rules of evidence.

ture hearings have not been specifically exempted, and because the Bail Reform Act only exempts detention hearings from application of the rules of evidence, we hold that the Federal Rules of Evidence should apply to proceedings relating to forfeiture of bond under Rule 46(e).

### 3. Burden of Proof

■It appears from the record that the original goals of the hearing held by Magistrate Atkins on October 5 and 6, 1987, were revocation of Vaccaro's release, detention of Vaccaro without bail, and forfeiture of Vaccaro's bond. *See* Motion to Revoke Conditions of Release and to Forfeit Bail, document # 662. However, because Vaccaro was already in custody on other federal charges at the time of the so-called revocation and detention hearing, and because Vaccaro conceded the issue of revocation of his release, the only issue remaining for the Magistrate was forfeiture of Vaccaro's bond. *See* Transcript of Hearing, pages 3, 5. The issue before us is whether the Magistrate should have required proof of breach by a preponderance of the evidence, instead of proof of breach by probable cause only.

18 U.S.C. § 3148(b) requires a judicial officer to enter an order of revocation and detention if, after a hearing, the officer finds that a) there is probable cause to believe that the defendant committed a crime while on release, and b) that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community.[4] The government argued, and the Magistrate agreed, that if she found probable cause to believe that Vaccaro had violated the law while on release, she was required to forfeit his bond. *See* document # 775, page 16, lines 14–25; page 25, lines 6–15. We do not adhere to such an application of section 3148.

If the Magistrate had been ruling on revocation of release or detention, utilization of the probable cause standard would have been appropriate. However, since the issue was forfeiture of Vaccaro's bond, the probable cause standard was not appropriate.

■ According to *Plechner,* 577 F.2d at 597, enforcement of a bond forfeiture is a civil case arising from a prior criminal proceedings. Civil actions generally require findings to be by a preponderance of the evidence. We see no significant difference between declaration of a bond forfeiture, sought by the government here, and the forfeiture enforcement action in *Plechner.* We believe both are civil proceedings, to which the rules governing civil proceedings generally should apply. Therefore, we hold that forfeiture of a bond is limited to those cases where it can be shown by a preponderance of the evidence that a defendant has violated a condition of release.

■ To summarize, we hold that an evidentiary hearing should be held on the issue of whether a condition of release has been breached, when requested by the defendant. We hold that where a defendant requests an evidentiary hearing for a bail forfeiture, the Federal Rules of Evidence shall apply. We further hold that where breach of a condition of release is determined for purposes of a bail forfeiture proceeding, the court's findings should be supported by a preponderance of the evidence.[5]

### C. *Construction of Bonds*

We now turn our discussion to the bonds in the instant case.

#### 1. Conditions of Bond # 1

■ The first bond was issued on July 5, 1984, in the amount of $100,000. The first document issued was entitled "Appearance Bond." This was signed by Vaccaro and

---

**4.** Section 3148(b) also mandates detention and revocation upon a finding, by clear and convincing evidence, that the defendant violated any other condition of release. 18 U.S.C. § 3148(b)(1)(B) (1988).

**5.** Vaccaro's request that a jury determine his bond forfeiture is denied. Rule 46(e) states that the "district court shall" declare any forfeiture. This authority is appropriately delegated to magistrates under Local Rule 11(d). Denying Vaccaro a jury trial does not violate his Constitutional rights.

Bernadine D'Anna of Rusty's Bail Bonds. Certain conditions are set forth in this appearance bond, most dealing with defendant's required appearance for court proceedings. The bond also contains the following language:

> If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment to the amount of this bond shall be due forthwith. Forfeiture of the bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

> . . . . .

> SEE, ALSO, ORDER SPECIFYING METHODS AND CONDITIONS OF RELEASE ATTACHED HERETO AND MADE A PART HEREOF.[6]

The separate Order Specifying Methods and Conditions of Release contained additional restrictions with which Vaccaro agreed to comply. One of these was that he not "violate any local, state or federal laws or regulations."

Defendants contend that the "violate no laws" condition was not part of the appearance bond, and therefore that they are not liable for any breach of that condition which may have occurred. We disagree.

■ A bail bond is a contract between the government and the defendant and his surety. *Plechner*, 577 F.2d at 598. The

language of the bond contract is to be strictly construed in accordance with the terms contained therein. *Lujan*, 589 F.2d at 438.

In holding that the "violate no laws" condition should be considered part of the appearance bond, we rely on general contract law and a reasonable construction of all documents entered into by the parties. First, and most significant, is the reference in the appearance bond to the Order Specifying Methods and Conditions of Release, "attached hereto and made a part hereof." It is generally accepted contract law that incorporation of another document makes that document a part of the agreement for the purpose specified. *See Carnation Co. v. C.I.R.*, 640 F.2d 1010, 81–1 USTC 9263 (9th Cir.1981), *cert. denied* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981); *Union Pac. R.R. Co. v. Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.*, 549 F.2d 114 (9th Cir.1976); *Lodges 743 and 1746 Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corp.*, 534 F.2d 422 (2nd Cir.1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976); *Giacona v. Marubeni Oceano (Panama) Corp.*, 623 F.Supp. 1560 (S.D. Tex.1985); *Paley Assocs., Inc. v. Universal Woolens, Inc.*, 446 F.Supp. 212 (S.D.N.Y. 1978).

The appearance bond clearly incorporates the Order Specifying Methods and Conditions of Release. The incorporating language is in all capital letters, and in larger type than that of the preceding language. A reasonable reading of the appearance bond would put a surety on notice that the Order Specifying Methods and Conditions of Release might contain additional conditions by which the surety would be bound. We find that the "violate no laws" condition of Bond # 1 is one to which the surety, Allied, obligated itself when its agent signed the appearance bond.

---

**6.** Defendants place great importance on the language "foregoing conditions," arguing that this precludes forfeiture for breach of any condition listed after that language. However, we read the document as a whole, applying a reasonable interpretation to the language. Defendant's interpretation does not consider the context of the whole document, and therefore must be rejected.

In further support of this conclusion, we look to two additional documents, executed contemporaneously with the appearance bond and the Order Specifying Methods and Conditions of Release. In addition to signing the appearance bond, Allied's agent, Ms. D'Anna also signed a document entitled "Notice to Surety." This notice informs the surety that forfeiture of the bond amount could follow from a violation of "*any* conditions of release" (emphasis in original). The surety is further warned that "[i]t is important that you read and understand all of the Conditions of Release which must be complied with by the defendant." The violate no laws condition of Vaccaro's release is found in section II of the Order Specifying Methods and Conditions of Release, entitled "Conditions of Release." This notice further serves to inform Allied of the extent of its undertaking.

Furthermore, the separate Bail Bond executed contemporaneously, printed by Allied, guarantees not only the appearance of the defendant, but also that the defendant "shall at all times render himself amendable to the orders and the process of the Court." This language certainly anticipates additional orders of the Court binding defendant, and clarifies Allied's intention to guarantee Vaccaro's compliance with all such orders. The consideration of all these documents strengthens our holding that Allied was put on sufficient notice that the violate no laws condition was one by which they would be bound.

■ Another argument propounded by Allied in an effort to escape liability is that their agent, Ms. D'Anna, exceeded the authority of her power of attorney. The power of attorney states that its authority "is limited to appearance bonds and cannot be construed to guarantee for failure to provide payments, back alimony payments, fines or wage law claims." Allied argues

that it cannot be held responsible for Vaccaro's alleged breach of the violate no laws condition, since its agent only had authority to bind them to "appearance bonds." This argument is unpersuasive for two reasons. First, the power of attorney specifically lists four types of payments which cannot be guaranteed. Based upon the maxim *inclusio unius est exclusio alterius*, other types of payments could potentially be guaranteed, because they are not specifically excluded. Also, the guarantee in question, that Vaccaro would violate no laws, is entirely different from any sort of payment. It more closely resembles the surety's guarantee that Vaccaro would appear.

The second reason we hold that agent D'Anna did have authority to bind Allied to all conditions set forth in the Order Specifying Methods and Conditions of Release is based on our earlier construction of the appearance bond. The Order Specifying Methods and Conditions of Release was incorporated into the appearance bond, forming one document. Therefore, holding the surety Allied responsible for all conditions in the Order Specifying Methods and Conditions of Release does not exceed the authority of the power of attorney, since we are only holding Allied responsible for the appearance bond. We read "appearance bond" to include those additional conditions found in the Order Specifying Methods and Conditions of Release.

### 2. Breach of Bond #1

■ We are able to rule on Vaccaro's alleged breach of the violate no laws condition of Bond #1, based on the record before us. Further bearing on this issue is not necessary. Vaccaro pled guilty to count 6 of the California indictment, for criminal acts committed on or about August 4, 1984.[7] On that date, Vaccaro was on release under the terms of Bond #1, issued July 5, 1984. Vaccaro's plea agree-

---

7. Vaccaro contends that the Magistrate improperly received information relating to his California plea agreement. Indeed, the Magistrate's report does refer to the plea agreement, although no evidence of the plea was presented at Vaccaro's hearing. Furthermore, upon hearing of Vaccaro's plea, the Magistrate assumed that

the plea covered acts committed between August, 1984, and August, 1985, since those are the dates specified in the indictment. However, the plea agreement itself, which apparently was not seen by the Magistrate, limits Vaccaro's culpability to an act occurring on or about August 10, 1984, and definitely before October, 1984.

ment is now a part of the record (document #778). Furthermore, Vaccaro does not contest the validity or terms of the plea agreement. Therefore, we find the preponderance of the evidence supports the conclusion that Vaccaro did violate a federal law while on release. On that basis, we declare a forfeiture of the $100,000 bond issued July 5, 1984, (Bond #1). Fed.R. Crim.P. 46(e). This declaration of forfeiture is made without abridging the right of the surety to move to set aside or remit the forfeiture, consistent with Fed.R.Crim.P. 46(e)(2) and (4).

### 3. Conditions of Bond #2

■ Bond #2 presents slightly different issues to us. Bond #2 is the $250,000 appeal bond, issued on June 11, 1985. The bond documents consist of the appearance bond (document #502) (which is a printed form identical to the appearance bond issued in Bond #1), a power of attorney (attached to document #502), and an Order Specifying Methods and Conditions of Release (document #503).

The Appearance Bond contains the same general guarantee found in Bond #1 by the surety that the defendant shall appear in compliance with all court orders; defendant's failure to comply with the "foregoing conditions" would result in forfeiture of the bond amount. The bond also includes the sentence, "SEE, ALSO, ORDER SPECIFYING METHODS AND CONDITIONS OF RELEASE ATTACHED HERETO AND MADE A PART HEREOF." This sentence is in all capital letters, and a type larger than the previous paragraphs, just as in Bond #1.

The Order Specifying Methods and Conditions of Release places additional restrictions on Vaccaro's release pending appeal, but is in a slightly different form than the Order in Bond #1.[8] The form lists several possible restrictions; in all instances, save one, a space appears where certain applicable conditions may be designated with a check mark or an "X". The one exception is condition number 1, which states as a

condition of release that the defendant "shall not commit a Federal, State, or local crime during the period of release." There is no space provided for a check mark or an "X" next to this condition. A reasonable understanding of this is that this one condition applies to *all* defendants receiving this form. It is not an optional condition that may or may not be designated, depending on the circumstances.

Indeed, this construction is consistent with the 1984 revision of the Bail Reform Act. Pursuant to the Act, the "commit no crimes" language is a condition imposed on all those released under 18 U.S.C. § 3142(c). Additional restrictions may apply, if the judicial officer deems it necessary. *See* 18 U.S.C. § 3142(c). But the "commit no crimes" condition definitely applied to Vaccaro when he signed the June 11, 1985, Order Specifying Methods and Conditions of Release.

In holding that the "commit no crime" condition is part of the appearance bond, we apply the same reasoning to Bond #2 as we did to Bond #1. The same language incorporates the Order Specifying Methods and Conditions of Release into the appearance bond. A reasonable reading of the bond contract should have put Classified, the surety on Bond #2, on notice that additional conditions might be found in the Order Specifying Methods and Conditions of Release. In guaranteeing the appearance bond, Classified not only guaranteed that Vaccaro would appear, but that he would comply with all other conditions of his release. Any violation by Vaccaro will subject Classified to liability on Bond #2.

In further support of our finding that the "commit no crimes" condition is one to which the surety was obligated, we refer to *United States v. Chapel*, 480 F.Supp. 588 (D.P.R.1979). In that case, the district court ordered forfeiture of a bond based on facts similar to those at hand. In *Chapel*, defendant posted a cash bond through a surety, under conditions that defendant appear at all court proceedings. A separate Order Specifying Methods and Conditions

---

**8.** The different format of the Order Specifying Methods and Conditions of Release used in Bond #2 reflects the 1984 amendments to the Bail Reform Act.

of Release required that defendant "surrender any passport he may possess." *Id.* at 590. Upon his failure to do so, the court ordered defendant's bond forfeited.

The district court dismissed defendant's contention that his failure to comply with the nonappearance-related condition did not constitute a violation of an "appearance bond," and therefore could not be the basis for confiscation of the bond. The court held that both defendant and surety were obligated to pay the amount of the bond. Even though the surety was unaware of the passport condition when he signed the bond, and even though the appearance bond did not contain language whereby the Order Specifying Methods and Conditions of Release was incorporated into the appearance bond, the court charged the surety with constructive knowledge of the court's use of separate Orders Specifying Methods and Conditions of Release. Because the surety was an experienced criminal attorney who had used a similar Orders Specifying Methods and Conditions of Release in previous cases, and since the surety became actually aware of the passport condition after reading it in the newspaper, the court held that its violation was one by which the surety was obligated.

Likewise, in the instant case, Classified is a professional corporation in the business of underwriting bail bonds. It is presumed that they are familiar with appearance bonds and separate orders specifying methods and conditions of release. Furthermore, our holding is not as onerous as that in *Chapel,* because Classified had full notice that the Order Specifying Methods and Conditions of Release was to be incorporated into the appearance bond. Because we read the two documents together, we hold that the "commit no crimes" condition of Vaccaro's release was one by which the surety Classified is bound.

### 4. Breach of Bond #2

Having determined that the "commit no crimes" condition is a part of the appearance bond, the next step is to determine whether Vaccaro breached that condition. It should be noted that the two conditions, found in Bond #1 and Bond #2, differ. In Bond #1, Vaccaro promised that he would "break no laws" while on release. In Bond #2, Vaccaro's promise was that he would "commit no crimes." Presumably, the purpose behind each condition is the same, i.e., to keep defendants from engaging in further criminal activity. However, we find troublesome the phraseology of the "commit no crime" condition. Instead of proscribing merely the violation of laws, which violation can occur without intervention of the criminal justice system, the condition of Bond #2 cannot be broken without some declaration by a judicial officer that a crime has been committed. For example, when a person runs a red light, a law has been violated; however, a crime may or may not have been committed, depending on whether there exists some defense, such as necessity.

The only case we found dealing with breach of a "commit no crimes" condition is *United States v. Santiago,* 826 F.2d 499 (7th Cir.1987). There, Santiago was arrested and charged with drug trafficking on July 23, 1985; a personal friend posted real estate as security in lieu of a cash bond of $25,000. One condition of Santiago's bond was that he "not commit a Federal, state, or local crime during the period of his release." *Id.* at 501. On February 3, 1986, Santiago was named in an indictment that superceded the original indictment of July 22, 1985. Additional drug offenses were charged in the superceding indictment. On February 7, 1986, Santiago was arrested and charged with an additional drug offense, not listed in the superceding indictment, that occurred between January 24 and February 5, 1986.

A magistrate held a detention hearing, at which the Federal Rules of Evidence did not apply, *see* 18 U.S.C. § 3142(f). At the hearing, extensive testimony was given by an FBI agent relating to Santiago's drug activities in late February. After hearing the testimony, the magistrate revoked Santiago's release and ordered him detained pursuant to his findings that probable cause existed that Santiago had committed a crime while on release, that he posed a danger to the community, and that no con-

ditions of release would reasonably assure the safety of persons and the community. *Id.* These are the findings required in order to revoke the release of a person under 18 U.S.C. § 3148(b).

Santiago subsequently pled guilty to three counts charged in the superceding indictment. In the plea agreement, the government agreed not to prosecute Santiago for crimes charged in the February 7, 1986, complaint, but stated that it would inform the district court of Santiago's activities and those charges, for purposes of sentencing. It was not until after accepting the guilty plea that the district court ordered Santiago's bond be forfeited.

On appeal, the surety on Santiago's bond argued, *inter alia,* (1) that Santiago never breached any condition of his release bond, and (2) that a judicial officer never made a finding that Santiago had breached a condition of his release bond. In finding that a judicial officer did make such a finding, the Fifth Circuit relied on the Magistrate's findings at the detention hearing, which hearing was held, at least in part, to determine whether Santiago should be detained and his bond revoked. The Magistrate made findings sufficient to justify Santiago's detention and revocation of release according to 18 U.S.C. § 3148(b). *Santiago,* 826 F.2d at 504–05. Section 3148(b) only requires a finding of probable cause to believe that a person has committed a crime while on release. But, as we stated earlier in this decision, we do not believe the probable cause standard is sufficient when ruling on a Rule 46(e) forfeiture and determining whether a condition of release has been violated. Therefore, we disagree with the *Santiago* decision, insofar as it suggests that forfeiture of bond is permissible upon showing probable cause of breach.

An issue not raised by the appellant in *Santiago,* and therefore not addressed by the court, is whether the "commit no crime" condition can be shown by anything less than *conviction* of a crime committed on release. None of the defendants in the instant case raise this issue, either, but this Court feels compelled to address it.

The condition of release signed by Vaccaro in Bond # 2 was that he would "commit no ... *crime"* (emphasis added). The government suggests that the California indictment charging violations of Federal law while Vaccaro was on release, is a sufficient basis on which to forfeit Vaccaro's appeal bond. We disagree. An indictment does not constitute proof that a crime has been committed, *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); rather, it contains charges that must be proved beyond a reasonable doubt. *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). Although we don't believe a conviction for a crime committed on release is a prerequisite to a Rule 46(e) forfeiture, we do hold that mere indictment is not enough.

We remand[9] this case to Magistrate Phyllis Halsey Atkins for a further hearing at which evidence will be heard on whether defendant John Vaccaro breached the condition of Bond # 2 (the appeal bond), that he commit no federal, state, or local crimes.[10] Bond # 2 should not be forfeited unless the Magistrate finds, by a preponderance of the evidence, that a breach has occurred. The hearing shall be consistent with the terms of this Order.

IT IS, THEREFORE, HEREBY ORDERED that Bond # 1, issued July 5, 1984, is declared *Forfeited,* in the amount of $100,000.

IT IS FURTHER ORDERED that this cause is *Remanded* to Magistrate Phyllis Halsey Atkins for the sole purpose of determining whether Vaccaro committed a crime after July 11, 1985, in violation of Bond # 2. The Magistrate shall hold a hearing on this issue, at which the Federal Rules of Evidence shall apply. She shall

---

**9.** We find no basis to disqualify Magistrate Atkins from presiding over further proceedings in this case.

**10.** We point out that Vaccaro's guilty plea to count six of the California indictment will not serve as a basis to forfeit Bond # 2, since the plea was for an act committed before Bond # 2 was issued.

thereafter file her report and recommendation which shall incorporate her findings.

IT IS FURTHER ORDERED that Bond # 2 shall not be forfeited unless the Magistrate finds by a preponderance of the evidence that Vaccaro did commit a crime.

## ON MOTION FOR RECONSIDERATION

Plaintiff, the United States, has filed a motion for reconsideration (document # 789) of our Order filed April 4, 1989 (document # 788). Specifically, plaintiff objects to our ruling that the Federal Rules of Evidence shall apply in all bond forfeiture proceedings, and that the party seeking forfeiture of the bond shall prove breach of the bond agreement by a preponderance of the evidence. Defendant has filed his opposition to the motion for reconsideration (document # 808), and the government has filed its reply (document # 810). For the reasons stated hereinafter, the government's motion for reconsideration is denied.

Contrary to plaintiff's allegation, the Court has not "completely ignored" the provisions of Fed.R.Evid. 1101(d). Rather, the Court's interpretation of that rule is at variance with plaintiff's. This Court's conclusion that the rules of evidence shall apply to bond forfeiture proceedings is not in abrogation of Rule 1101(d), because we do not classify bond forfeiture proceedings as "proceedings with respect to release on bail or otherwise." Fed.R.Evid. 1101(d). While "proceedings with respect to release on bail or otherwise" are specifically excepted from application of the Rules of Evidence, we do not read that exception to include bond forfeiture proceedings, which are basically civil contract actions. Nor do we find any authority supporting the classification proposed by plaintiff.

Furthermore, the Court does not rest its conclusion regarding applicability of the Federal Rules of Evidence upon the language of section 3142(f) of the Bail Reform Act, but rather on the absence of a specific exception to their applicability in bond forfeiture proceedings.

The issue to be determined at a bond forfeiture proceeding is whether a condition of the bond has been breached. In order to do this in a manner that affords all parties with due process of law, the bond agreement must be construed, and factual findings must be made to determine whether the defendant did, in fact, perform some prohibited act, or fail to perform some obligatory act. This proceeding is far enough removed from the issue of revocation of a defendant's release that we do not believe that it falls within the exception of Rule 1101(d).

For the same reasons, the burden of proof must be a preponderance of the evidence. The *in rem* forfeiture statutes and cases to which plaintiff refers are inapposite. The burden of proof in most of those cases is set by statute; there is no such statute governing bond forfeitures. In the absence of a statutory directive to the contrary, we believe it prudent to adhere to the generally accepted burden of proof in civil actions, i.e., preponderance of the evidence.*

We further point out the distinction we see between deprivations of liberty or property that are followed by an opportunity to contest such deprivation, and those deprivations that are more final in nature. We see bond forfeiture proceedings to be of the latter type and believe that proof must be by a preponderance. That some deprivations of the former type are possible upon a lesser showing is of little import here.

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's motion for reconsideration (document # 789) is DENIED.

IT IS FURTHER ORDERED that defendant's request for reconsideration of our

---

* The Court takes notice of the decision in *Heacock v. Commonwealth,* 228 Va. 235, 321 S.E.2d 645 (1984), wherein the analysis of the Virginia Supreme Court parallels our own. Although not binding precedent on this court, we do not lightly disregard a well-reasoned opinion of another court, where the analysis of the facts and law can inform our own decision. In that case, the court also concluded that proof in a civil forfeiture action must be by a preponderance of the evidence.

order denying defendant a jury trial on the forfeiture issue is DENIED.