**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rafael SANTIAGO, Defendant.**

**Appeal of Esther CRUZ, Appellant.**

**No. 86–1850.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1986.
Decided July 29, 1987.

Jeffrey Vollen, Chicago, Ill., for defendant.

Bradley E. Lerman, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER, COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

The appellant, Esther Cruz, appeals the district court's denial of her motion to set aside the forfeiture and return the bond posted to secure Rafael Santiago's release. We affirm.

## I

The facts of this case are not in dispute. Pursuant to a grand jury indictment handed down the previous day, Rafael Santiago was arrested July 23, 1985, and charged with drug trafficking; bond was set at $25,000 cash. Santiago was unable to post the required cash bond and moved for a modification of the bond and requested that the court allow a friend, the appellant Cruz, to post real estate as security in lieu of Santiago's posting cash. On August 14, 1985, the appellant executed an "Assignment of Interest in Real Estate to the United States of America" and a "Forfeiture Agreement." The Forfeiture Agreement provided:

"Pursuant to Order entered by Magistrate Joan Humphrey Lefkow in case number 85 CR 470 on August 15, 1985, Esther Cruz hereby agrees that:

The real property posted as security on the $25,000 bond set in case number 85 CR 470, said property being commonly known as 1714 North 17th Avenue, Melrose Park, Illinois, shall be forfeited to the United States of America should the defendant Rafael Santiago fail to appear as required by this Court or otherwise violate any condition of this Court's order of release."

On that date she signed a forfeiture agreement that provided that her real estate (property) would be forfeited to the United States Government if the defendant Santiago "violate[d] any condition of [the] Court's order of release." Magistrate Patrick Mahoney at the time of approving the filing of the real estate interest in lieu of the $25,000 bail issued an order of release dated August 16, 1985 setting forth Santiago's conditions of release in part in the following language:

"[t]his Court hereby orders defendant's pretrial release upon his execution of an unsecured appearance bond in the amount of $25,000, secured by the property of Esther Cruz, 1714 17th Avenue, Melrose Park, subject to the following conditions:

1. That defendant not commit a Federal, state or local crime during the period of his release, ..."

On February 3, 1986, Santiago was named in an indictment that superseded the original indictment of July 22, 1985. The superseding indictment charged him with the same offenses contained in the original indictment as well as additional drug offenses. The district court allowed Santiago's bond posted in response to the charges in the original indictment to "stand as bond in this instance." On February 7, 1986, while on bail, Santiago was arrested once more and again charged with a drug related offense specifically with conspiracy to distribute heroin and cocaine between January 24 and February 5, 1986 (crimes not set forth in the original or superseding indictments). On February 10 the prosecutor filed a motion to revoke Santiago's bail and detain him. The next day a lengthy detention hearing was held before Magistrate Lefkow consisting of 36 pages of transcribed testimony. James Whitmer, a special agent of the FBI in Chicago, the only witness called, testified to Santiago's involvement in the sale of drugs in Chicago in the latter part of January and early February 1986. His testimony included the fact that (1) an informant had purchased heroin from Santiago, (2) government agents monitored a telephone call during which arrangements were made for a drug sale involving Santiago, (3) he recognized Santiago's voice on a tape recording made later that same day, January 31, 1986, when Santiago sold the drugs to the government informant, and (4) when Santiago was arrested he had in his possession six marked government twenty dollar bills. Whitmer further testified that the informant had told him that the back room of La Abusa Dora Lounge, a tavern operated by the appellant Cruz, was used to process and package heroin and cocaine. Whitmer also testified that during a search of the tavern's back room on February 7, 1986, FBI agents seized a "triple-beam balance" scale which is commonly used to weigh narcotics. After hearing this testimony, Magistrate Lefkow found "[t]hat the defendant [Santiago] is a danger to the community for continuing to engage in—at least probable cause that he continued to engage in the distribution of narcotics." In addition, the Magistrate recited in her February 21 order of detention that "no condition or combination of conditions [would] reasonably assure the safety of persons and the community." Magistrate Lefkow ordered Santiago detained finding that he had violated one of the conditions of his release that read that he "not commit a ... crime during the period of his release" and that both the defendant and Cruz were so advised.

On March 3 Judge Aspen accepted a plea agreement in which Santiago pleaded guilty to three counts charged in the superseding indictment. In the plea agreement presented to the court the government agreed as follows, that it:

"will not prosecute defendant Rafael Santiago for any criminal violations relating to the charges described in the criminal complaint [of February 7, 1986] in case number 86 CR 83 but will fully apprise the District Court and the United States Probation Office of the nature and scope and extent of defendants [sic] conduct regarding those charges and related matters in aggravation and mitigation relevant to the issue of sentencing."

After accepting the guilty plea, the trial court ordered that Santiago's "bond [Cruz-Real Estate] be forfeited."

On May 7, 1986 the appellant Cruz, pursuant to Rule 46(e)(2) of the Federal Rules of Criminal Procedure, filed a motion to set aside the forfeiture and return the bond. In support of her motion Cruz argued that (1) Santiago never missed any court dates, (2) there was no evidence that she knew of Santiago's illegal activities or facilitated them in any manner, (3) she signed ambiguous documents in pledging her real estate, and (4) the government suffered no injury as a result of Santiago's alleged drug transactions. After the trial judge denied her motion without a hearing on March 24, 1986, Cruz filed a notice of appeal from the trial judge's decision sixty days later on May 23, 1986.

Three issues are presented in this appeal: (1) Is a surety's appeal from a bail bond forfeiture civil or criminal in nature, thus what is the applicable time limit for filing an appeal 10 or 60 days? (2) Did the district court make a finding that Santiago had breached the conditions of his release? (3) Did the district court abuse its discretion in denying Cruz's motion to set aside the forfeiture and return the bond posted for the defendant Santiago and refusing to hold a hearing on the motion?

## II

We must initially determine whether a surety's appeal from a bail bond forfeiture is civil or criminal in nature. If the appeal is civil in nature the surety has sixty days to appeal, Rule 4(a)(1), Fed.R.App.P.; on the other hand, if the appeal is criminal in nature only ten days are allowed, Rule 4(b), Fed.R.App.P.

Essentially a bail bond agreement is a contract between two parties: the government and the surety on behalf of the criminal defendant. If a forfeiture is declared the surety becomes the debtor of the government. Courts have held that since an appeal of a criminal bail bond is essentially a contractual matter, the time limitation (sixty days) for civil appeals in Rule 4(a)(1), Fed.R.App.P. applies. *See, e.g., United States v. Brouillet,* 736 F.2d 1414, 1415 (10th Cir.1984); *United States v. Roher,* 706 F.2d 725, 726 (5th Cir.1983); *United States v. Jackson,* 691 F.2d 478, 479 (11th Cir.1982); *United States v. Martinez,* 613 F.2d 473, 482 n. 30 (3d Cir.1980); *United States v. Plechner,* 577 F.2d 596, 597–98 (9th Cir.1978). *See also Wisconsin v. Wickstrom,* 134 Wis.2d 158, 162–64, 396 N.W.2d 188 (1986).

In *Roher,* the Fifth Circuit concluded that appeals of criminal bond forfeitures should be treated as civil proceedings stating:

"Although there are principled reasons supporting either result, on balance we favor treating such forfeitures as civil proceedings because (1) they involve contracts, a plainly civil subject to which the reasons for short time periods for criminal appeal do not apply ..."

706 F.2d at 727. The Ninth Circuit in *Plechner* held that appeals of bail bond forfeitures are governed by Rule 4(a)(1), Fed.R.App.P., reasoning that:

"Based on precedent within our own circuit and a reexamination of the relevant principles, we conclude that enforcement of a bond forfeiture is, like an action to collect a criminal fine, a civil case arising from a prior criminal proceeding.

A bail bond is a contract between the government and the defendant and his surety.... *Upon forfeiture, the surety becomes the government's debtor....* Thus, the government's motion for judgment was civil, not criminal, in nature...."

577 F.2d at 597–98 (emphasis added) (citations omitted). The decisions in *Jackson, Martinez,* and *Brouillet* [1] have primarily relied on the Ninth Circuit's reasoning in *Plechner.*

As other courts have emphasized, a bail bond is a civil contractual agreement between the government and the surety on behalf of the criminal defendant, and, if a forfeiture is ordered the surety becomes the debtor of the government. We hold that because a suit on a contract is civil in nature that the time for a surety to appeal from the forfeiture of a bail bond filed in a criminal proceeding is governed by the sixty day limitation for civil appeals in Fed.R. App.P. 4(a)(1). We note in so holding that state courts have held similarly. In *Wisconsin v. Wickstrom,* 134 Wis.2d 158, 164,

---

**1.** The government relies solely on the Tenth Circuit's opinion in *United States v. Jones,* 567 F.2d 965 (10th Cir.1977) to support its position that the ten-day criminal time period should apply in bond forfeiture cases. We note that *Brouillet* overruled *Jones* more than two years prior to the government's filing of its brief in this case. This court has every right to expect and does expect the highest degree of professional conduct from each and every attorney who appears before it—including those who represent the interests of the United States. Reliance on an overruled case manifests either incompetence, carelessness or an attempt to mislead the court, any one of which falls far short of acceptable professional conduct.

396 N.W.2d 188 (1986), the Wisconsin Supreme Court held "bail forfeiture appeals are civil in nature ..." The Illinois Supreme Court in *People v. Rubright*, 241 Ill. 600, 89 N.E. 713 (1909) held "a scire facias on a forfeited recognizance [given in a criminal prosecution] is a civil suit for the recovery of money due upon a contract." *See also* Indiana Code 27–10–2–12(i). In the instant case, the district judge denied Cruz's motion to set aside the forfeiture and return the bond on March 24, 1986. Cruz filed her notice of appeal sixty days later on May 23, 1986, thus her appeal was timely under Fed.R.App.P. 4(a)(1).[2]

### III

Cruz argues that (1) Santiago never breached any condition of his release bond and (2) a finding was not made by a judicial officer that Santiago had breached any conditions of his release bond. In support of her argument that Santiago had not breached any condition of his bond, Cruz emphasizes that Santiago never missed any court dates.

As recited in this opinion, Santiago was originally charged in a grand jury indictment on July 22, 1985 with various drug offenses; he was charged in a superseding indictment filed on February 3, 1986 with additional drug offenses. He was arrested again on February 7, 1986 pursuant to a criminal complaint issued that date and charged with drug trafficking crimes committed while free on the previously posted

bond. The Forfeiture Agreement Cruz signed unambiguously stated that her property:

"shall be forfeited to the United States of America should the defendant Rafael Santiago fail to appear or *otherwise violate any condition of this Court's order of release.*"

(Emphasis added). One of the conditions listed in Santiago's release order was that he "not commit a Federal, state or local crime during the period of his release ..." It is undisputed that while Santiago was free on bond [Cruz's real estate] he was re-arrested on a subsequent criminal complaint issued February 7, 1986, charging him with unrelated drug trafficking crimes. Santiago entered into a plea agreement with the Government and agreed to enter a plea to three of the counts charged in the superseding indictment and to have the crimes set forth in the criminal complaint of February 7, 1986 read into the record on the condition that the government not formally prosecute those crimes set forth in the complaint (February 7) but at the same time allowing the court to take such evidence into consideration when imposing sentence on the three crimes he entered a plea to in the superseding indictment of February 3, 1986.

The district court may, after a hearing initiated by motion of the government, revoke the bail of a person free on bond if the court finds that the requirements of 18 U.S.C. § 3148(b) are satisfied.[3] Section

---

**2.** We note that under Fed.R.App.P. 4(b), the identity of the appealing party may also determine the nature of the appeal. Since only the "defendant" may appeal a bond forfeiture ruling within ten days according to Fed.R.App.P. 4(b), the language of the rule itself suggests that Cruz, who is not the "defendant in" a criminal proceeding, might very well have been entitled to the sixty-day time limit applicable to civil appeals on this ground as well.

**3.** Title 18, U.S.C. § 3148(b) (involving "sanctions for violation of a release condition") provides:
"(b) **Revocation of release.**—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
(1) finds that there is—
(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
(B) clear and convincing evidence that the person has violated any other condition of release; and
(2) finds that—

3148(b) requires the district court to find: (1) either probable cause to believe that the defendant has committed a Federal, State or local crime while on release, or clear and convincing evidence that he has violated any other condition of his release and (2) either that there are no combination or conditions of release that will prevent the defendant from fleeing or posing a danger to the safety of any other person or the community or that the person is unlikely to abide by any condition or combination of conditions of release.

On February 11, Magistrate Lefkow granted the government's motion to revoke Santiago's bond and have him detained after holding a hearing and finding that the "[d]efendant is a danger to the community for continuing to engage in—at least probable cause that he continued to engage in the distribution of narcotics." In her written order of February 21, 1986, the Magistrate ordered Santiago detained finding:

"1. Defendant has demonstrated his inability to comply with the conditions of release by committing another offense while on release, conspiring to distribute heroin and cocaine.

2. Defendant has been indicted by the grand jury for the Northern District of Illinois, Eastern Division, in case number 85 CR 470 for violations of Title 21, United States Code, Sections 846 and 841(a)(1).

3. On February 11, 1986, in case number 86 CR 83, this Court found probable cause to believe that defendant committed a violation of Title 21, United States Code, Section 846.

4. Findings No. 2 and 3, *supra,* establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of persons and the community. The Court further finds that defendant offered no evidence at the detention hearing and has not rebutted this presumption.

5. There is a serious risk that defendant will continue to engage as an active participant in the distribution of narcotic drugs, in particular heroin and cocaine,

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other persons or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly."

Section 3142(g) provides:

"The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(2)(K) or (c)(2)(L) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required."

and as such defendant will post a danger to persons and the community.

6. The Court finds by clear and convincing evidence that there is no condition or combination of conditions set forth in Title 18, United States Code, section 3142(c) which will reasonably assure the safety of the community and any other person."

FBI Agent Whitmer's unrebutted testimony included the fact that (1) an informant had purchased heroin and cocaine from Santiago, (2) a telephone call on January 31, 1986 was monitored setting up a drug transaction involving Santiago, (3) he recognized Santiago's voice on a tape recording made with the assistance of a body recorder on an informant during the purchase of drugs from Santiago later that same day (January 31, 1986), and (4) when Santiago was arrested he had in his possession six marked government twenty dollar bills. Thus Magistrate Lefkow heard extensive evidence of Santiago's continued involvement in drug trafficking even while he was free on bond. We hold the magistrate heard more than ample evidence to justify her finding that Santiago committed a crime while on release on bond. We therefore hold that Cruz's arguments that Santiago did not breach a condition of his release bond, and that a judicial officer failed to make a finding that Santiago breached a condition of his release bond are without merit.

IV

The appellant Cruz argues that if Santiago breached a condition of his bond, the district court abused its discretion in not setting aside the bond forfeiture because no evidence was presented that she knew of or participated in or facilitated Santiago's illegal activities, the defendant never missed any court dates, she signed an ambiguous "assignment of interest in real estate to the United States of America" and "Forfeiture Agreement" and lastly that the

4. Although the appellant Cruz asks as to determine whether the district court abused its discretion in not *remitting* the bond, the record establishes that she requested in her motion that

government suffered no injury as a result of Santiago's drug transactions while he was free on bail. In addition, she argues the trial judge abused his discretion in not holding a hearing on the issue.[4] A "[c]ourt may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, ... if it ... appears that justice does not require the forfeiture." Fed.R.Crim.P. 46(e)(2).

In reviewing the district court's decision our standard of review is whether the district judge abused his discretion. *See United States v. Gutierrez*, 771 F.2d 1001 (7th Cir.1985). In *Gutierrez* this court stated: "The decision whether to set aside ... a forfeiture rests within the sound discretion of the district court and will be reversed only if the court acted arbitrarily or capriciously ... Similarly, we hold that the district court's decision on a surety's request for a hearing on the motion is discretionary." *Id.* at 1003 (citation omitted). We emphasize that "[a]n abuse of discretion occurs only when no reasonable person could take the view adopted by the trial court." *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984).

Both parties agree that our decision in *Gutierrez* provides the framework for our analysis:

"In the usual case, the factors that the district court should consider in making its determination regarding whether a forfeiture should be set aside ... include: '(1) the willfulness of the defendant's breach of conditions; (2) the participation of the sureties in apprehending the defendant; (3) the cost, inconvenience and prejudice suffered by the government as a result of the defendant's breach; and (4) any explanation or mitigating factors presented by the defendant.' *United States v. Castaldo*, 667 F.2d 20, 21 (9th Cir.1981), *cert. denied*, 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982). It is not necessary that each of these factors be resolved in the government's favor

the district judge *set aside* or *vacate* the forfeiture. We thus will not consider whether the trial court erred in failing to remit the bond.

for the district court to enforce full forfeiture."

771 F.2d at 1003. A further factor Cruz presents is "[i]f the movant is a surety, the court may consider whether the surety is a professional bondsman or one of defendant's friends or family members, and the appropriateness of the amount of the bond." *Id.* at 1004.

■ Applying the *Gutierrez* factors to the instant case, it is clear that the first factor does not support Cruz since Santiago's breach of the conditions of his release was willful in that he engaged in a conspiracy to distribute cocaine and heroin while on release on bail. The second factor is inapplicable since Santiago neither attempted to flee nor were his whereabouts unknown. As to the third factor, it is evident that the government incurred costs and suffered inconvenience and prejudice as a result of Santiago's conduct as money and man hours were expended in investigating and charging Santiago including the witnesses', grand jury's and court's. Federal employees were needed to testify at additional hearings. Regarding the fourth factor, any "explanation or mitigating factors presented by" the person seeking to set aside the bond revocation, it is nigh onto impossible that an intelligent person would reasonably believe that Cruz (the owner of the bar) did not know of Santiago's drug trafficking since the back room of her tavern was used to process, weigh and package heroin and cocaine. Further, the fact that Santiago made all of his required court appearances does not negate his violation of the release order, and finally, the document involving her assignment of her real estate and the Forfeiture Agreement she signed, as we noted earlier, were anything but ambiguous. Cruz signed a Forfeiture Agreement advising her that she shall forfeit her property if Santiago violated any condition of the court's order of release. Although Cruz states she "is (or used to be) a friend of the defendant and not a professional bondsman" and this should be considered in her favor, such a hollow statement does not overcome the factors that favor the government. We hold that the district court had ample reason in refusing to set aside the forfeiture of the bond since (1) Santiago willfully breached the condition of his release by again engaging in drug trafficking while out on bail on a similar offense (2) the government incurred significant costs and suffered inconvenience and prejudice as a result of Santiago's conduct and (3) Cruz offers no real explanation or substantial mitigating factors.

■ It is most interesting that the appellant would even claim that the district court abused its discretion in not holding an evidentiary hearing on her motion to set aside the bond forfeiture for neither she (Cruz) nor the defendant requested that the trial judge hold a bail forfeiture hearing. Our decision in *Gutierrez* makes clear that whether or not to hold a hearing on a surety's motion to set aside a bond forfeiture rests within the sound discretion of the trial court. Cruz did not even request the trial judge to hold a hearing nor has she referred us to any testimony in the record much less case law to establish an abuse of discretion on the part of the trial judge in not holding a hearing. Accordingly, the district judge was within his discretion in choosing not to hold a hearing.

V

We hold that the nature of the appellant's appeal was civil and governed by the sixty day limitation prescribed for civil appeals in Rule 4(a)(1), Fed.R.App.P. Therefore, Cruz's appeal was timely filed. We also hold that Santiago did breach a condition of his release bond and admitted the same when he entered into a plea agreement to plead to three of the counts in the superseding indictment and agree that the government could present further testimony to the court concerning the crimes set forth in the criminal complaint of February 7, 1986 and the court could and would take them into consideration when sentencing. Therefore, the district court properly refused to set aside the forfeiture of the bond since Santiago wilfully breached the conditions of his release, the government incurred costs and suffered inconvenience

and prejudice as a result of Santiago's conduct, and Cruz offered no explanation or valid factors of mitigation. Finally, we hold that the district judge was within his discretion in refusing to hold a hearing on Cruz's motion to set aside the forfeiture of the bond.

AFFIRMED.