**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wayne L. TAYLOR, Defendant–
Appellant.**

No. 91–2770.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 28, 1992.

Decided Sept. 18, 1992.

Mark A. Cameli, Asst. U.S. Atty., Madison, Wis., for U.S.

Wayne L. Taylor, pro se.

Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Wayne L. Taylor, who pleaded guilty to armed bank robbery, is serving a long term. More than a year after the conviction (and about two years after Taylor's apprehension) the prosecutor filed a motion asking the court's permission to destroy the Smith and Wesson .357 magnum Taylor had in his possession when arrested. Taylor replied with a demand for the return of the gun, arguing among other things that by failing to initiate forfeiture proceedings within 120 days of the arrest, 18 U.S.C. § 924(d)(1), the government surrendered all entitlement to keep or dispose of the weapon. The district court treated Taylor's papers as implying a motion under Fed. R.Crim.P. 41(e) for the return of seized

evidence. The court denied this motion because Taylor declined to submit evidence that he owned the gun; it rejected his contention that the risk of self-incrimination entailed in such a submission relieves him of the need to do so.

Losing parties in criminal cases have only 10 days to appeal. Fed.R.App.P. 4(b). Taylor took 25, which raises the question whether we have jurisdiction. Drawing the line between criminal and civil for purposes of Rule 4(b) is difficult because many appealable orders technically "in" criminal cases look more civil than criminal—from the return of bond money to motions under 28 U.S.C. § 2255 that parallel the civil petition for a writ of habeas corpus. See *Georgia v. Rachel*, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966) (orders remanding criminal cases governed by period for civil appeals); *United States v. Santiago*, 826 F.2d 499 (7th Cir.1987) (order forfeiting bail bond may be appealed within the time provided for civil cases). An order for the destruction of a gun looks like a civil forfeiture order, and there is little to distinguish such a decree from an order forfeiting bond, which *Santiago* holds is "civil."

■ Several courts have treated orders resolving motions under Rule 41(e) as civil for purposes of appeal. E.g., *United States v. Mosquera*, 845 F.2d 1122, 1125 n. 3 (1st Cir.1988); *Purcell v. United States*, 908 F.2d 434, 437–38 (9th Cir.1990). Although some of these opinions suggest that the civil period applies only to motions before trial, the nature of the dispute is the same no matter when the motion comes. Clarity and simplicity in jurisdictional rules should be preserved except for the most compelling reason. No reason we can imagine justifies creating traps for litigants by switching the rules of appellate jurisdiction in mid-case. Accordingly, all appeals from orders granting or denying motions under Rule 41(e) will be treated as civil appeals. Taylor's notice of appeal is timely under the standards of Fed.R.App.P. 4(a).

■ Ordinarily prosecutors destroy contraband without ado and either return other evidence to the owner or begin forfeiture proceedings. The document the prosecutor filed in this case had no legal status. Instead of telling the court to ignore the prosecutor's motion, however, Taylor asked the judge to instruct the prosecutor to give him the magnum. Omission of reference to Rule 41(e) did not alter the nature of Taylor's request. That the government's motion came too late to initiate a forfeiture proceeding did not deprive the district court of jurisdiction to act on Taylor's request. The criminal prosecution supplies subject-matter jurisdiction extending to ancillary disputes. Cf. *Interstate Cigar Co. v. United States*, 928 F.2d 221, 222 n. 1 (7th Cir.1991); *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15 (7th Cir.1978). Limits on the time to commence litigation rarely affect subject-matter jurisdiction. *Irwin v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Even if forfeiture proceedings were the exclusive way to determine claims to property—and they are not—persons filing claims may waive arguments based on the government's tardiness. There is no jurisdictional shortfall.

■ At an evidentiary hearing before a magistrate judge, the prosecutor established that federal records do not show who owns the gun. A magnum with this one's serial number has not been reported stolen or sold to Taylor. Records showed its sale by a gun shop, and the buyer reported that he had traded the gun to a person other than Taylor. At Taylor's request, the magistrate judge secured the presence of Stacy R. Wilhelm, who Taylor asserted would testify that Taylor owned the gun. Although Wilhelm was present, Taylor announced that he had no evidence to establish his ownership—that he was not going to call Wilhelm as a witness and would not testify himself for fear that the government would prosecute him for being a felon in possession of a weapon. He asked the magistrate judge to treat him as the owner despite the lack of evidence. The magistrate judge declined, a position with which the district judge agreed.

It is hard to see how Taylor's testimony that he owned the gun could have facilitated prosecution. The crime is being in *possession* of a gun after conviction; ownership implies possession, but the United States already had plenty of evidence of possession, having seized the gun at the time of Taylor's arrest. Because an admission of ownership would strengthen the prosecutor's case of possession, however, Taylor has a privilege not to be compelled to give such testimony. The privilege deals only with *compulsory* self-incrimination. The fifth amendment provides that a person "shall [not] be compelled in any criminal case to be a witness against himself". The prosecutor did not compel Taylor to give evidence against himself. He was free to remain silent, and did. Silence has consequences under Rule 41(e), just as in the criminal trial, because silence is no evidence. No evidence that Taylor owned the gun meant that the United States could melt the weapon without subverting Taylor's rights. See *Baker v. United States*, 722 F.2d 517, 518–19 (9th Cir.1983).

What Taylor must have wanted is a form of immunity paralleling that established in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *Simmons* holds that a defendant who contends that the police seized evidence in violation of the fourth amendment may establish standing—that is, may present evidence that the search or seizure invaded his privacy or possessory interests—without fear that the evidence will be used against him at trial. Any other approach, the Court thought, would prevent enforcement of the exclusionary rule. Efforts to extend the scope of *Simmons* have not fared well. E.g., *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *United States v. Kahan*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974). The Court has declined to use *Simmons* to relieve a litigant in civil litigation of the need to establish elements on which he bears a burden of production or persuasion. Cf. *Baltimore Department of Social Services v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990); *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). A party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence. Indeed, the Court has held, the tribunal may draw an adverse inference against a civil litigant who asserts the privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 316–20, 96 S.Ct. 1551, 1556–59, 47 L.Ed.2d 810 (1976). If this be seen as a "price" on the assertion of the privilege, so be it. Loss of a weapon by a felon who cannot legally own a gun is not the sort of "price" that should lead a court to imagine the presence of non-existent evidence or to disregard the word "compelled" in the Constitution of the United States.

Because the record contains no evidence that Taylor owns the gun, the United States may do as it likes with the weapon without violating any of his entitlements. *United States v. United States Currency*, 863 F.2d 555, 560 n. 10 (7th Cir.1988). Taylor's remaining contentions do not call for separate discussion.

AFFIRMED.