In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1538

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IGNACIO TORRES,

*Defendant.*

APPEAL OF: IGNACIO TORRES, SR. and
NOEMI LORENZANA

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-CR-604-1 — **Harry D. Leinenweber,** *Judge.*

ARGUED APRIL 9, 2015 — DECEMBER 2, 2015

Before FLAUM, RIPPLE, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Ignacio Torres was indicted for possession with intent to distribute 500 grams or more of cocaine. He was released on bond, and his parents secured the bond with a house they owned. Torres violated a condition

of his release, and the district court revoked his bond. At the bond revocation hearing, the district court judge stated that Torres should surrender "today." Torres and his attorney left the courtroom and went into the hallway. Torres's counsel reentered the courtroom to clarify exactly when Torres needed to surrender. When Torres's counsel returned to the hallway, Torres was gone. Efforts to return Torres to custody have not been successful. As a result, the district court declared the bond forfeited. So Torres's parents lost their house. Because it was not unreasonable for the district court to find that justice required bond forfeiture with Torres still at large, we affirm the district court's order of default judgment on the forfeiture agreement.

## I. BACKGROUND

On October 6, 2011, Ignacio Torres ("Torres") was indicted for possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). Torres was released on February 23, 2012, on a $200,000 bond secured by real property owned by his parents, Noemi Lorenzana and Ignacio Torres, Sr. ("Sureties").

In connection with the bond, Sureties signed a forfeiture agreement. Sureties agreed that "$200,000 of their equitable interest in [their] … real property may be forfeited to the United States of America, should … Torres fail to appear as required by the court or otherwise violate any condition of the [district court's] order of release." The district court's order of release ordered "that the defendant be released on the condition that: [Torres] promises to appear in court as required and surrender to serve any sentence imposed." It also set forth the following additional conditions of release:

[1]  the defendant must not violate any federal, state or local law while on release.

[2]  the defendant is placed in the custody of Noemi Lorenzana … who agrees (a) to supervise the defendant in accordance with all of the conditions of release, (b) to use every effort to assure the defendant's appearance at all scheduled court proceedings,: and (c) to notify the court immediately if the defendant violates any conditions of release or disappears;

[3]  the defendant must post with the court … [a] forfeiture agreement and quick [sic] claim deed;

[4]  the defendant must avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution;

[5]  the defendant must refrain from use or unlawful possession of a narcotic drug or other controlled substance. Any testing may be used with random frequency ….

The conditions also required Torres to wear an electronic ankle monitor, although, at Torres's request, the court later removed this condition.

Torres pleaded guilty on June 27, 2013, but the district court continued the issue of acceptance of the plea so that Torres could remain out on bond until his sentencing. The same day, U.S. Pretrial Services Officer James Wheatley contacted Lorenzana to inform her that Torres tested positive for marijuana and cocaine. At no time did Sureties ask to cancel or withdraw from the bond.

On November 11, 2013, the government filed an emergency motion to revoke bond after a witness in the case informed the government that he had contact with Torres. The

next day, the district court held a hearing on the motion. Sureties claim they did not receive notice of this court proceeding, though the government argues Sureties had to have known about the proceeding because Torres lived with Lorenzana. The district court granted the government's motion to detain Torres and revoked his bond. The district court informed Torres that surrender "should be today." Torres, defense counsel, and a Pretrial Services Officer left the courtroom together. Counsel and the Pretrial Services Officer reentered the courtroom to get clarification on the exact time Torres had to surrender to the U.S. Marshals. By the time counsel and the Pretrial Services Officer left the courtroom, Torres was gone. The district court issued a bench warrant. Torres apparently remains at large.

Two days after Torres fled, the government moved for a declaration of bond forfeiture. The government refiled the motion on December 10, 2013. Torres and Sureties filed their response on December 16, 2013, requesting that the court exonerate, i.e., release them from responsibility for, the bond and set aside the forfeiture. The district court set a hearing on the motion for February 18, 2014. On the date of the hearing, the district court entered an order granting the government's motion and declaring forfeiture of the bond. It found that Torres:

> breached the condition of his pretrial release by: (1) using unlawful narcotic drugs in or around June 2013; (2) having contact with a potential witness against him on or about November 10, 2013; (3) by violating 18 U.S.C. § 1073, which prohibits flight to avoid custody or confinement after conviction for a felony; and (4) by violating federal law by ignoring a court order to surrender to the U.S. Marshals on November 12, 2013.

The district court also found that Sureties had notice of any material changes in the release conditions and did not object to any changes, received notice of court proceedings, and entered into a forfeiture agreement with the government. The district court refused Sureties' request to set aside the forfeiture, finding the interests of justice did not justify such an action. On February 26, 2014, the district court entered an order of default judgment on the forfeiture agreement. Sureties, represented by the same counsel as Torres, now appeal.

## II. ANALYSIS

Sureties argue that the district court erred by refusing to set aside the bond forfeiture because (1) bond was revoked before Torres's flight, and (2) Sureties were not given notice of material changes in the conditions of Torres's release. We review a decision denying a request to set aside bond forfeiture for abuse of discretion. *United States v. Santiago*, 826 F.2d 499, 505 (7th Cir. 1987). "[A]n abuse of discretion occurs only when no reasonable person could take the view adopted by the trial court." *Id.* (citing *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir. 1984)). Factual findings are reviewed for clear error. *United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000). Sureties bear the burden of proving that the forfeiture should be set aside. *United States v. Foster*, 417 F.2d 1254, 1256 (7th Cir. 1969).

"The court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). Nevertheless, the court may set aside bail forfeiture if "the surety later surrenders into custody the person released on the surety's appearance bond" or "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). Unless a district court exercises its discretion to set aside the bail forfeiture,

the district court must enter a default judgment on the government's motion. Fed. R. Crim. P. 46(f)(3)(A). Once judgment is entered, the court also has the discretion to remit the judgment in whole or part. Fed. R. Crim. P. 46(f)(4).

The Federal Rules of Criminal Procedure also describe when the district court must exonerate the surety and release the bond. "The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court must exonerate a surety … who timely surrenders the defendant into custody." *Id.* at 46(g).

### A.  Torres Was on Bond at Time of his Flight.

Sureties argue that their property should not be forfeited because bond had been revoked before Torres's flight. Sureties claim "[o]nce a bond is revoked, a surety's obligation to ensure the continued good behavior of the individual released from custody is at an end" because the contract between Sureties and the government has terminated. In a footnote, the government responds to the crux of Torres's argument by stating that "[b]ond conditions remain in effect until the defendant surrenders." We agree with the government that revocation of a bond does not automatically terminate a surety's liability.

Although a bond proceeding occurs as part of a criminal case, it is collateral to the criminal case and civil in nature. *See United States v. Santiago*, 826 F.2d 499, 502 (7th Cir. 1987). A bond agreement is a civil contract between the government and the surety on behalf of a criminal defendant. *Id.* The government and the surety agree that if the government releases the defendant from custody, "the surety will under-

take that the [defendant] will appear personally at any speci-
fied time and place to answer." *United States v. Davis*, 202
F.2d 621, 625 (7th Cir. 1953). So, the purpose of the bond
agreement and its forfeiture provisions are to ensure that the
defendant will attend every required court appearance and
submit to a sentence if found guilty. *Stack v. Boyle*, 342 U.S. 1,
4–5 (1951). In essence, the defendant is delivered to the cus-
tody of the surety, whose responsibility is to ensure the de-
fendant's actions comply with the terms of his release. *See
Taylor v. Taintor*, 83 U.S. 366, 371 (1872) ("When bail is given,
the principal is regarded as delivered to the custody of his
sureties. Their dominion is a continuance of the original im-
prisonment."). If the defendant fails to appear at the proper
time and place or violates a condition of release, "the surety
becomes the absolute debtor of the United States for" the
bond amount. *Davis*, 202 F.2d at 625.

The Forfeiture Agreement executed by Sureties incorpo-
rated the district court's order outlining the conditions of re-
lease. As a result, and in accordance with the common law
principles of bail, Sureties agreed to ensure that Torres
would "appear in court as required and surrender to serve
any sentence imposed." They also agreed that if "Torres
fail[ed] to appear as required by the Court or otherwise vio-
late[d] any condition of the Court's order of release,"
"$200,000 of their equitable interest in the … real property,
may be forfeited to the United States of America."

Sureties' argument has some logical appeal. If the district
court revoked bond, naturally, one could conclude that the
action terminated any agreement in connection with the
bond. This analysis would lead to a rule that when a district
court orders the defendant to surrender, bond is terminated.

However, this rule misses the point of the bond agreement. The government released Torres from custody to Sureties because Sureties assured the government that they would return Torres to custody. Since the purpose of the agreement was to ensure that Torres returned to custody, it follows that the bond would not end until Torres was back in custody. The district court's revocation order merely compelled Torres to return to custody, as opposed to a voluntary surrender or Sureties bringing him in. The revocation order did not end the bond. Rather, it set the procedure for how to return Torres to custody.

This conclusion is supported by the Federal Rules of Criminal Procedure. A court is not required to exonerate the surety until "a bond condition has been satisfied" or until a surety "timely surrenders the defendant into custody." Fed. R. Crim. P. 46(g). The most relevant general bond condition was that Torres "promise[d] to appear in court as required and surrender to any sentence imposed." This did not occur. Torres failed to appear in court and surrender himself as ordered by the district court. Therefore, the bond condition was not satisfied, and it was still in effect. Further, Sureties did not surrender Torres to custody after the district court revoked the bond, so it was still in force. As a result, the court was not required to exonerate Sureties. The mere order of revocation does not terminate a bond. It is the defendant's return to custody pursuant to that order that terminates the bond. *See id.* Therefore, a surety's liability does not cease until the defendant is taken into custody after a district court's bond revocation order. And since Torres was still on bond, Sureties were liable when Torres fled.

Of course, returning a defendant to custody is not the on-

ly way a surety's liability terminates. Rule 46(g) also requires a court to exonerate a surety and its bond: (1) when a bond condition has been satisfied, (2) when the court has set aside or remitted the forfeiture, or (3) when the surety deposits cash in the amount of the bond.

Lastly, Sureties contend that *United States v. Milhelm*, 834 F.2d 118 (7th Cir. 1987) and *United States v. Castaldo*, 636 F.2d 1169 (9th Cir. 1980) compel a different result. But we find neither case helpful. In *Milhelm*, we held that an arrest warrant without more does not terminate bail obligations. 834 F.2d at 123. We explicitly avoided "the difficult issue of when bail obligations *do* terminate after a violation." *Id.* at 122–23.

In *Castaldo*, the defendant appealed his conviction pursuant to the now-defunct bail jumping statute. Like Torres, Joseph Castaldo appeared at his bond revocation hearing. 636 F.2d at 1170. At the beginning of the hearing, which took place on April 30, 1979, Castaldo asked for a continuance to substitute new counsel. The court denied the request, but continued the remainder of the hearing until the end of the court calendar. *Id.* Castaldo failed to appear when the case was recalled. *Id.* Unable to locate Castaldo, the court forfeited the bail and issued an arrest warrant. *Id.* The district court scheduled another hearing in the case for July 31, 1979, and Castaldo did not appear at the hearing. *Id.* Castaldo was recaptured in October 1979 and indicted for having failed to appear at the July hearing. *Id.* The Ninth Circuit held that a defendant who had been released on bail, whose bail had been forfeited, and who had an arrest warrant issued for his arrest cannot be convicted of bail jumping based on his failure to appear at a hearing scheduled after the forfeiture of

bail. *Id.* at 1171–72. Relevant to this case, the Ninth Circuit seems to find that because the bail had been forfeited, Castaldo was no longer released pursuant to bail. *Id.* This makes sense. Forfeiture ended the bond agreement just as returning the defendant to custody would. *See* Fed. R. Crim. P. 46(g). Even under *Castaldo*, Sureties' argument fails because the district court here had not forfeited his bond at the time he fled. So, Torres was still "on bond." In any event, because the Ninth Circuit had to determine whether bond was still in effect after it had been forfeited, and our case deals with whether bond was in effect between revocation and forfeiture, *Castaldo* does not help Sureties.

**B.  District Court Did Not Clearly Err by Finding Sureties Had Notice of All Material Changes in Release Conditions.**

Although Sureties state there were three material changes to the circumstances of defendant's release—removal of electronic monitoring, Torres's guilty plea, and bond revocation—they only argue that they failed to receive notice of the bond revocation. They cannot claim lack of notice with respect to the other two material changes because the record contains evidence from which one can infer that they had notice. Sureties' primary argument is that the bond revocation was a material change in the conditions of Torres's release of which they should have had advanced notice because "[i]mminent detention (as opposed to possible detention at some indeterminate future point) obviously gives rise to a greater risk of flight."

We assume, without deciding, that bond revocation is a condition of release. *But see United States v. DiCaro*, 852 F.2d 259, 265 (7th Cir. 1988) (stating that bond revocation is a

sanction for violating condition of release). We hold, however, that Sureties were not entitled to notice that the district court revoked the bond because it was not a material change in the bond that increased their risk. Therefore, Sureties' position is without merit.

When a material change is proposed to a condition of bond, a surety is entitled to notice, an opportunity to be heard, and an opportunity to revoke his or her commitments if the judge alters the release conditions over the surety's objections. *United States v. King*, 349 F.3d 965, 966 (7th Cir. 2003). Material changes "to a bond made without the consent or knowledge of the surety may render the obligation unenforceable." *Id.* (citing *Reese v. United States*, 76 U.S. 13, 21 (1869)). A material change is a modification to the bond that "significantly augments the risk that the defendant will not appear when required." *Id.* at 967 (citing *United States v. Gambino*, 17 F.3d 572 (2d Cir. 1994)); *see also State v. Ocampo-Navarro*, 93 P.3d 745, 2004 WL 1609122 at *4 (Kan. Ct. App. July 16, 2004) (per curiam) (unpublished) ("A modification to a bond agreement is considered material when noncompliance with the new obligation could result in the revocation of a defendant's bond."). The increased risk must be different than the original risk the sureties assumed when posting bond for a defendant. *King*, 349 F.3d at 968.

This bond revocation is not a material change in the bond, so notice was not necessary. *See id.* at 967. Sureties agreed to ensure Torres's appearance as ordered by the district court until he surrendered to serve any sentence imposed. That the bond might be revoked was a risk that Sureties undertook when they initially agreed to the bond. The scheduled hearing and even the revocation itself did not put

any new conditions on Torres. For these reasons, the revocation of the bond was not a material modification that increased the Sureties risk and entitled them to notice.

Also, we note that while Sureties argue that the risk of imminent detention created by the bond revocation was different from the original risk Sureties assumed, Sureties had already agreed to assume the risk associated with imminent detention. Contrary to Sureties' contentions, before the revocation hearing, Torres's future detention was not a "possible detention at some indeterminate future point." Torres pleaded guilty on June 27, 2013. The charge that Torres pleaded to carries a mandatory minimum sentence of five years' imprisonment. The district court continued acceptance of the plea to allow Torres to remain on bond until his sentencing. Sureties do not dispute their knowledge of his guilty plea, and they knew Torres would serve time. Again, they shoulder the burden of proving facts that support their argument that the bond should not be forfeited. *See Foster*, 417 F.2d at 1256. By continuing to guarantee the bond after Torres's guilty plea, Sureties assumed the risk for Torres in light of imminent detention. The district court did not clearly err in finding the Sureties had notice of all material changes.

To be clear, we do not hold that Sureties were not entitled to notice of the hearing. Indeed, a surety should be informed of any judicial proceedings that potentially affect his or her interests. *See King*, 349 F.3d at 967. Here, the district court determined that Sureties had notice of the hearing. This finding was not clearly erroneous in light of the fact that Torres's attorney, who was present at the hearing, represented both Torres and Sureties. Torres, who also ap-

peared at the hearing, lived with Lorenzana. There is no evidence on the record that Sureties did not receive notice of the hearing. Sureties carry the burden to establish this fact. *See Foster*, 417 F.2d at 1256. Therefore, the court did not clearly error by finding that Sureties had notice of the hearing.

### C. District Court Did Not Abuse its Discretion by Refusing to Set Aside the Bond Forfeiture.

Because Torres was on bond when he fled, and because the district court did not err in finding that Sureties had notice of material changes, the district court did not abuse its discretion by refusing to set aside the bond forfeiture. The court may set aside a bail forfeiture if it appears that justice does not require bail forfeiture. Fed R. Crim. P. 46(f)(2)(B). "In most cases, the setting aside of a forfeiture … while the defendant is still at large would undermine the purpose of bail bonds, i.e., to insure the presence of the accused." *United States v. Gutierrez*, 771 F.2d 1001, 1004 (7th Cir. 1985). Here, Torres is apparently still at large. So, in light of Torres's continued flight and the circumstances discussed above, it was not unreasonable for the district court to refuse to set aside bond forfeiture.

*Gutierrez* outlines a six-factor test for district courts to consider when deciding whether to set aside a bond forfeiture: "(1) the willfulness of defendant's breach of conditions; (2) the participation of the sureties in apprehending the defendant; (3) the cost, inconvenience and prejudice suffered by the government as a result of the defendant's breach; [] (4) any explanation of mitigating factors presented by the defendant [or surety];" (5) whether the surety is a professional bondsman or one of defendant's friends or family members; and (6) the appropriateness of the amount of the

bond. *Id.* at 1003–04 (internal citations omitted). The unique factors presented by this case do not easily align with the *Gutierrez* factors, so the district court's failure to consider these factors is not unreasonable. The district court handled this tough case well. We sympathize with Sureties, but Torres's continued flight weighs heavily in favor of forfeiture and a finding that the district court did not err. Like us, the district court seemed sympathetic to Sureties, having suggested that forfeiture would not have been necessary if Torres were in custody at the time the district court entered the forfeiture judgment, which was three months after Torres fled. Nonetheless, district courts should fully consider the *Gutierrez* factors before ordering bond forfeiture. This will ensure that district courts balance the appropriate factors in exercising its discretion and aid appellate review.

We note that the district court's failure to remand Torres to custody immediately does trouble us since Sureties were not present to object to continuing their obligation until the time and date of surrender set by the district court. This issue could have been avoided if Torres had been taken into custody at the conclusion of the hearing. We suggest that district courts consider requesting a representative from the U.S. Marshals Service to be present in the courtroom for bond revocation hearings, if resources permit. The situation here may have been avoided had someone been available to take Torres into custody at the time the district court revoked the bond. While the lack of U.S. Marshal presence arguably led to Torres's flight, Sureties cannot avoid their contractual duties because of it.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.